862 F.2d 1471
 Lolita PARKER, Plaintiff-Appellee,
v.
James Michael WILLIAMS, individually and as Chief Jailer,
Macon County, Alabama, et al., Defendants,
Lucius Amerson, individually and as Sheriff, Macon County,
Alabama and Macon County, Alabama, Defendants-Appellants.
 Nos. 86-7233, 86-7369.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 11, 1989.
 
 Baxley, Beck, Dillard & Dauphin, William J. Baxley, Joel E. Dillard, Charles Dauphin, Birmingham, Ala., for Amerson in both cases.
 Gray, Langford, Sapp, Davis & McGowan, Edwin L. Davis, Tuskegee, Ala., for Macon County in No. 86-7233.
 Charles S. Conley, Montgomery, Ala., for Macon County in both cases.
 Jerry B. Kurz, Hall & Kurz, Chicago, Ill., James J. Friedman, Waukegan, Ill., for Lolita Parker in both cases.
 Griffin Sikes, Jr., Montgomery, Ala., for Lolita Parker in No. 86-7369.
 Appeals from the United States District Court for the Middle District of Alabama.
 Before HILL and JOHNSON, Circuit Judges, and ESCHBACH*, Senior Circuit Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 This appeal arises from a jury award of compensatory and punitive damages and attorney's fees on claims brought under state tort laws and 42 U.S.C.A. Sec. 1983 against Macon County, Alabama; Lucius Amerson, the former sheriff of the county; and James Williams, the chief jailer of the county jail. The county and the sheriff appealed. We withdraw our initial opinion, 855 F.2d 763 (1988), and substitute this opinion. We reverse the judgments against the county and the sheriff.
 
 I. Background
 
 2
 Lolita Parker spent the night of June 30, 1984, in the Macon County jail after she hit a woman on the head with a glass during a bar scuffle. The following morning the chief jailer, James Williams, offered to help Parker get home. Williams agreed to arrange for Parker's bond if she would pose nude for sexually explicit photographs. Parker undressed for Williams in the cell so he could check for any scars or marks on her body.
 
 
 3
 Williams arranged for Parker's bond. Although Williams had instructed Parker to meet him at a nearby store, she took a cab to a friend's house instead. Not long thereafter Williams, having learned Parker's location from the cab driver, knocked on the friend's door. Williams was still in uniform. He persisted when told that Parker was not there and eventually found her in the bedroom. Williams informed Parker that her bond had been revoked and that she would have to return with him to the jail. They entered the cab, but Williams directed the driver to take them to his house. Once inside the house, Parker alleges Williams raped her.
 
 
 4
 In 1984, Williams was convicted of first degree rape and kidnapping in Alabama state court after a jury trial. On June 28, 1985, Parker filed suit against Williams, Macon County sheriff Lucius Amerson, Macon County itself, and the individual Macon County commissioners. The complaint alleged violations under Alabama tort law and 42 U.S.C.A. Sec. 1983. The individual commissioners were dismissed as defendants, and a jury trial was held February 3-6, 1986. The jury found the chief jailer, the sheriff, and the county all liable on both the state and the federal claims, and awarded compensatory damages of $100,000. The jury additionally awarded punitive damages of $100,000 against the sheriff and the county.
 
 
 5
 Sheriff Amerson and Macon County appealed the jury verdict and the damages award. This panel heard oral argument in December 1986 and withheld judgment pending certification of the following question to the Alabama Supreme Court: "Whether the sheriff of a county may be considered an 'employee' of the county for purposes of imposing liability on the county under a theory of respondeat superior?" The Alabama Supreme Court answered the certified question in the negative. Parker v. Amerson, 519 So.2d 442 (Ala.1987).
 
 
 6
 Appellants raise several issues, including claims that the district court erred in applying collateral estoppel to preclude them from litigating the fact of the rape, that the county and the sheriff are immune to state tort liability under state law, that the sheriff is immune to suit against him in his official capacity under section 1983, that the sheriff can assert qualified immunity as a defense to suit against him in his individual capacity under section 1983, and that the county is not liable under section 1983 because no action was taken pursuant to a county policy or custom which resulted in Parker's injuries. We address each of these claims in turn.
 
 II. Collateral Estoppel
 
 7
 Sheriff Amerson attempted to introduce evidence at trial showing that there was no physical violence during the rape and that there was voluntary foreplay leading up to the rape. These facts are relevant to a jury's finding that Williams actually committed rape. The district court denied admission of this evidence based on the doctrine of collateral estoppel. The district court held that Williams' criminal conviction in Alabama state court in 1984 for kidnapping and rape collaterally estopped all defendants from challenging the fact of the rape in the civil action.
 
 
 8
 The due process clauses of the Fifth and Fourteenth Amendments[1] require precluded parties to have at least one full and fair opportunity to litigate an issue before being bound by a prior determination of that issue. See, e.g., Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard."); Blonder-Tongue Laboratories, Inc. v. University of Illinois Found., 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971) ("Some litigants--those who never appeared in a prior action--may not be collaterally estopped without litigating the issue."). Unfortunately, neither Sheriff Amerson nor the county had the opportunity to litigate this issue in the original proceeding. That was a state criminal action in which Williams was the lone defendant. Not only did the sheriff and county not join that action, it is clear that they would not have been able to join it. Neither Sheriff Amerson nor Macon County has had an opportunity to litigate the fact of the rape. We hold therefore that the district court erred in collaterally estopping defendants Amerson and Macon County on the issue of the commission of the rape.[2] Because this is the single factual event upon which all liability is based in this case, we must vacate the judgment as to defendants Sheriff Amerson and Macon County and remand the case for a new trial. We address the remaining issues on appeal to determine the scope of the issues to be addressed at the new trial.
 
 III. Liability of the Defendants
 A. State Law Claims
 
 9
 The district court instructed the jury that both Macon County and Sheriff Amerson could be liable on the state law claims if the jury found that Amerson had been grossly negligent or wanton in hiring and retaining Williams and that the gross negligence or wantonness was a proximate cause of Parker's injury. The jury found for Parker and against Sheriff Amerson and Macon County on the state law claims. Macon County asserts that it could not be vicariously liable for Sheriff Amerson's acts. Sheriff Amerson argues that he was immune from liability as an agent of the state.
 
 
 10
 In answering the question certified to it, the Alabama Supreme Court agreed with Macon County and Sheriff Amerson. In pertinent part, the court stated:
 
 
 11
 A sheriff is not an employee of a county for purposes of imposing liability on the county under a theory of respondeat superior. A sheriff is an executive officer of the State of Alabama, who is immune from suit under Article I, Sec. 14, Alabama Constitution of 1901, in the execution of the duties of his office.... That portion of Sec. 14-1-6[sic], Code of Alabama 1975, which purports to make a sheriff civilly liable for the acts of his jailer is unconstitutional under Article I, Sec. 14, and Article III, Sec. 42 of the Alabama Constitution of 1901.
 
 
 12
 Parker, 519 So.2d at 442-43. The Alabama Supreme Court's answer disposes of the state law claims raised in this case. Those claims based on section 14-6-1 are eliminated to the extent that Parker's interpretation of section 14-6-1 has been expressly deemed to violate the Alabama constitution. Amerson is immune under state law from liability as Williams' employer. Macon County cannot be vicariously liable as Amerson's employer because they shared no employer-employee relationship. Consequently, we hold that Amerson and the county cannot be liable on Parker's state law claims.
 
 B. Amerson's Liability under Section 1983
 1. Official Capacity
 
 13
 Parker sued Sheriff Amerson in both his official and individual capacities. In general, an action against an official acting in his official capacity imposes liability on the entity that official represents, provided the entity received notice and an opportunity to be heard. Brandon v. Holt, 469 U.S. 464, 471-72, 105 S.Ct. 873, 877-78, 83 L.Ed.2d 878 (1985). The Alabama Supreme Court stated that Amerson was a state rather than county official. The Eleventh Amendment insulates a state from suit in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 98-100, 104 S.Ct. 900, 906-907, 79 L.Ed.2d 67 (1984).[3] Although the Eleventh Amendment does not insulate from suit state officials acting in their official capacities, at least for prospective injunctive relief, Edelman v. Jordan, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974), regardless of the entity named as defendant, the Eleventh Amendment bars retroactive damage awards which must be paid by the state. Quern v. Jordan, 40 U.S. 332, 338, 99 S.Ct. 1139, 1143-44, 59 L.Ed.2d 358 (1979).
 
 
 14
 In this case, Amerson is a state official being sued in his official capacity for retroactive damages likely to be paid out of the state treasury.[4] The state has neither consented to suit nor waived its Eleventh Amendment immunity. Consequently, the Eleventh Amendment bars Parker's claim against Amerson in his official capacity.
 
 2. Individual Capacity
 
 15
 Although Amerson is immune to suit in his official capacity, he can nonetheless be sued in his individual capacity. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Amerson is not entitled to assert the absolute immunity of the Eleventh Amendment as a defense to actions against him in his individual capacity. See generally Kentucky v. Graham, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105-06, 87 L.Ed.2d 114 (1985). Amerson may, however, be entitled to qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Amerson did assert qualified immunity at trial, but the district court held that he was not entitled to such immunity. Because the availability of qualified immunity is a question of law, Mitchell v. Forsyth, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985), we review the district court's decision de novo.
 
 
 16
 Qualified immunity shields government officials from liability for actions taken pursuant to their discretionary authority. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. The doctrine is available to the extent the "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. The test for evaluating whether an official is entitled to assert qualified immunity in a case is objective. See Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). The question we address is whether a reasonable sheriff in the same circumstances as Amerson and knowing what Amerson knew or should have known could have concluded that his actions did not violate any clearly established statutory or constitutional rights of Parker. See Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987).
 
 
 17
 We must first identify the nature of the right Parker possessed in 1984 which she alleges Amerson violated. Although Parker was incarcerated, the Eighth Amendment does not create any rights that the Sheriff could have violated. The Eighth Amendment protects only those who have been convicted of a crime. Ingraham v. Wright, 430 U.S. 651, 668-70, 97 S.Ct. 1401, 1410-11, 51 L.Ed.2d 711 (1977). The due process clause of the Fourteenth Amendment protects individuals arrested and detained under state law but not yet convicted. See generally Revere v. Massachusetts General Hospital, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); Ancata v. Prison Health Services, Inc., 769 F.2d 700, 703 (11th Cir.1985).[5] A pre-conviction detainee has a limited liberty interest in freedom from bodily harm. Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).[6] Although mere negligence does not rise to a Fourteenth Amendment violation, Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), state officials may not take actions that are indifferent to the health and safety of individuals detained before trial. See, e.g., Partridge v. Two Unknown Police Officers of the City of Houston, 791 F.2d 1182 (5th Cir.1986) (state has obligation to respond to pre-trial detainee's psychiatric illness under the due process clause of the Fourteenth Amendment). Additionally, deliberate or callous indifference to a pre-trial detainee's health or safety on an individual level can constitute a Fourteenth Amendment violation. Cf. Davidson, 474 U.S. at 347, 106 S.Ct. at 670.
 
 
 18
 In this case, defendant Amerson hired Williams as county jailer and subsequently promoted Williams to the position of chief jailer. As chief jailer, Williams had control over all prisoners, male and female, in the jail. By the time Amerson hired him, Williams had been convicted of indecent exposure; he had undergone treatment for a variety of mental problems, including memory lapses, talking to himself, and multiple personality experiences; and he had had a history of drug use. Amerson either knew of this background or could have discovered it through minimal investigation. The question in this case, then, is whether a reasonable sheriff, knowing Williams' background, could have concluded that his actions in hiring and promoting Williams did not violate Parker's Fourteenth Amendment right to be free from arbitrary risks of serious personal injury during pre-trial detainment. We agree with the district court that a reasonable sheriff could not have reached this conclusion.[7] Consequently, Amerson is not entitled to assert qualified immunity in this case.
 
 C. Macon County's Section 1983 Liability
 
 19
 The Eleventh Amendment does not protect Macon County from liability under section 1983. Local governing bodies can be sued directly under section 1983 for recovery of monetary damages caused by violations of established constitutional rights. See, e.g., Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). County liability under section 1983 is not imposed on the basis of a theory of respondeat superior. Monell, 436 U.S. at 691, 98 S.Ct. at 2036 ("a municipality cannot be held liable under Sec. 1983 on a respondeat superior theory"). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Sec. 1983." Id. at 694, 98 S.Ct. at 2037. Custom which has not received official approval may also provide a basis for imposing liability on a municipality or other local governmental body, providing the custom is "permanent and well settled." Id. at 691, 98 S.Ct. at 2036 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 168, 90 S.Ct. 1598, 1614, 26 L.Ed.2d 142 (1970)). Naturally, for the county to be liable in this case, there must be a causal connection between the county's responsibilities and Parker's injuries. Monell, 436 U.S. at 690, 98 S.Ct. at 2035. An act can satisfy the causation requirement of section 1983 when it "involves official policy as the moving force of the constitutional violation." Id. at 694, 98 S.Ct. at 2037.
 
 
 20
 The specific event which could give rise to county liability in this case is Amerson's hiring of Williams. The county may be liable under section 1983 in one of two ways. Sheriff Amerson may have been acting directly pursuant to an official county policy or custom in hiring Williams without an adequate background check. See Monell, 436 U.S. at 694, 98 S.Ct. at 2037. Alternatively, Amerson may have been acting independently but as the ultimate repository of county authority in making personnel decisions. Id. (county policy may be made by "those whose edicts or acts may fairly be said to represent official policy"); see generally Familias Unidas v. Briscoe, 619 F.2d 391 (5th Cir.1980). As such, Amerson himself could have established the county policy or custom.
 
 
 21
 In this case, the county itself did not have any kind of official policy or well-established custom regarding personnel decisions. The county may be liable, however, for personnel policies or customs established by Sheriff Amerson if Amerson had ultimate county authority over such matters. The identification of officials having the authority to exercise final county authority over a particular area is a matter of state law. City of St. Louis v. Praprotnik, --- U.S. ----, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). Such officials may have that authority from one of two sources: county authority may be granted directly, or the authority may be delegated by an official having the power to do so. Id. (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986)).
 
 
 22
 In Familias Unidas, our predecessor court held that when a state official holds absolute power over "particular tasks or areas of responsibility entrusted to him by state statute ... at least in those areas in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one whose edicts or acts may fairly be said to represent official policy for which the county may be held responsible under Section 1983." 619 F.2d at 404 (citation omitted) (emphasis added). Application of the Familias Unidas test of "final authority or ultimate repository of county power" has been practical and not technical. Courts look at the substance of an official's authority over a particular matter, rather than the technical allocation of responsibility under state law. See, e.g., Berdin v. Duggan, 701 F.2d 909, 914 (11th Cir.) (mayor ultimate repository of city power because "all it took was the mayor to say, 'Get your stuff and go, you are fired' "), cert. denied, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983). For example, the court in Lucas v. O'Loughlin, 831 F.2d 232, 235 (11th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988), in addressing the role of a Florida sheriff, stated:
 
 
 23
 Although elected by virtue of state law, he was elected to serve the county as sheriff. In that capacity, he had absolute authority over the appointment and control of his deputies. His and their salaries were paid by local taxation and according to a budget approved by the county commissioners. We conclude, therefore, that his act was the act of [the county].
 
 
 24
 In Lucas, the court held the county liable for an employment decision made by the sheriff over which the sheriff had complete control. Id. at 234-35 (applying Familias Unidas principles).
 
 
 25
 The relationship between Amerson and the county in this case is central to the evaluation of whether the county can be liable for Amerson's actions. If in hiring and training Williams, Sheriff Amerson was acting as the final repository of county authority, then the county may be liable for constitutional violations arising from the sheriff's actions. Although the Alabama Supreme Court stated that Amerson was an employee of the state, Parker, 519 So.2d at 443, that does not resolve the issue of whose duty Amerson was implementing when he hired Williams. Amerson's functional role in conducting his personnel policy is more significant than his technical status as an employee of the state. The pivotal point is whether Amerson was exercising county power with final authority.
 
 
 26
 In practice, Alabama counties and their sheriffs maintain their county jails in partnership. The county in essence provides the facility and the money for upkeep, and the sheriff in essence manages the institution. Every county in Alabama must maintain a county jail. Ala.Code Sec. 11-14-10. More precisely, every county must obtain a site and erect a "suitable" jail. Id. at section 11-16-28. Once in place, the county must appropriate funds for the jail. Id. at section 11-14-20. The county's financial support of the jail includes compensating the sheriff, id. at section 11-12-15(a)(2), and paying for reasonable business expenses incurred by the sheriff. Id. at sections 11-12-14, 11-12-15(a)(1), (2). The Alabama board of corrections reports to the county commission as the "body having control over the jail." Id. at section 14-6-81. Alabama relegates legal custody and charge of the county jail to the county sheriff. Id. at section 14-6-1.[8] The sheriff is the caretaker with regard to prison living conditions. Id. at section 11-14-21. Any prisoners in the county jail are in the sheriff's custody. Id. at sections 11-16-29, 14-6-4. Pursuant to his responsibility of running the county jail, the sheriff has authority to hire jailers and other necessary personnel. Id. at section 14-6-1.
 
 
 27
 Macon County, not the state, has the responsibility for running the county jail under Alabama law. As a general principle, the county cannot be insulated from liability for constitutional violations occurring in the performance of its obligations by assigning the authority to perform those obligations to another party. See Ancata, 769 F.2d at 705 (county obligation to provide medical care for pre-trial detainees not extinguished by contracting out authority). Although the county's authority to provide a service may be vested in an official designated as a state official, the county cannot be insulated from liability based on its responsibilities with regard to that service by the simple expedience of vesting power in a state official. See Hearn v. Gainesville, 688 F.2d 1328, 1334 (11th Cir.1982). The state may not artificially extend its Eleventh Amendment immunities to local governing entities by labeling local officials state officials and by then defining the duties of those officials under state law.
 
 
 28
 Regardless of the sheriff's duties otherwise, we are looking narrowly at Sheriff Amerson's hiring decisions for the Macon County jail. See, e.g., Van Ooteghem v. Gray, 774 F.2d 1332, 1337 (5th Cir.1985) (Texas treasurer could be sued in official capacity because decisions fell "on the local side of his duty.... Whatever state duties a County Treasurer may have, we are persuaded that in the personnel matters at issue here, Gray was wearing his county hat."). One official may exercise county authority over some matters and state authority over other matters. For example, in Crane v. Texas, 766 F.2d 193 (5th Cir.), cert. denied, 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985), the Fifth Circuit held a county liable for actions of a state district attorney. The court noted that a Texas district attorney has the attributes of both a state official and a county official. The court found that "much like the county itself, his office is a local entity, created by the State of Texas and deriving its powers from those of the State, but limited in the exercise of those powers to the county, filled by its voters, and paid for with its funds." Id. at 195.[9]
 
 
 29
 Sheriff Amerson acted as the ultimate repository of county authority in establishing a personnel policy at the county jail. See Lockridge v. Etowah County Commission, 460 So.2d 1361, 1363 (Ala.Civ.App.1984). Amerson followed his customary procedure in hiring and promoting Williams. In so doing, Amerson was acting as the ultimate or final holder of county authority over personnel decisions in the county jail. Sheriff Amerson's policy of hiring the jailer without an adequate background check thus can fairly be ascribed to the county. See Lucas v. O'Loughlin, supra (applying similar analysis and reaching same conclusion with respect to Florida sheriff).
 
 
 30
 Macon County asserts that it cannot be liable if Amerson is entitled to absolute immunity to suit in his official capacity, because that conclusion necessarily involves a finding that Amerson is a state rather than a county official. We disagree. Amerson is entitled to absolute immunity under the Eleventh Amendment because it appears that the state would pay any retroactive damage award assessed against him. We have found no case that requires a plaintiff to choose between suing state officials in their official capacities as representatives of the state and suing directly the local governmental units whose authority the state officials are exercising. One official may be a state official in the performance of some of his functions, and a county official in the performance of others. See e.g., Crane v. Texas, supra (although characterized as a state official under state law, Texas district attorney is county official for section 1983 purposes). Consequently, although the Eleventh Amendment bars suit against Amerson in his official capacity, that immunity does not prevent Parker from suing Macon County directly.
 
 
 31
 Macon County also argues that this case is about a single incident, and that a single incident of negligence or misconduct cannot give rise to section 1983 county liability. A single incident may, however, be indicative of a policy or practice that can give rise to section 1983 county liability. See, e.g., Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (death resulting from policy of using whatever force was necessary); Anderson v. City of Atlanta, 778 F.2d 678 (11th Cir.1985) (failure to give medical care because of policy of understaffing). In Pembaur, the Supreme Court stated that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." 475 U.S. at 480, 106 S.Ct. at 1298-99. These "appropriate circumstances" are "where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 483-84, 106 S.Ct. at 1300-01. Consequently, the mere fact alone that this may have been a single incident does not insulate the county from liability. See also City of St. Louis v. Praprotnik, --- U.S. ----, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988) (plurality).
 
 
 32
 Finally, Macon County argues that, without supervisory or administrative control over its sheriff, the county cannot be liable for his actions. We disagree. The county need not exercise direct control over the sheriff with respect to the sheriff's hiring decisions in order to be liable under section 1983 for damages caused by those decisions. See Lucas v. O'Loughlin, 831 F.2d 232 (11th Cir.1987); cf. Pembaur, 475 U.S. at 483 n. 12, 106 S.Ct. at 1300 n. 12 ("Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability.") (emphasis in original). Amerson had the ultimate authority to make personnel decisions in connection with the county jail. Consequently, the county may be liable under section 1983.[10]
 
 
 33
 Because we remand for relitigation on the fact of the rape, we must also remand for a redetermination of causation. In order for the county to be liable, Parker must establish that Amerson's inadequate personnel policy was the proximate cause of her injuries. Simple negligence on the part of the sheriff is an insufficient basis upon which to rest county liability. Parker must show that the personnel policy was inadequate, and that that inadequacy was a proximate cause of her injuries. If on remand the court finds that Williams raped Parker, and that Amerson's inadequate hiring policy was a proximate cause of the rape, then the county will be liable for damages to Parker for her injuries.
 
 D. Attorney's fees
 
 34
 The district court awarded $74,000 to Parker for attorney's fees under 42 U.S.C.A. Sec. 1988. Only defendants Macon County and Amerson challenge this award. Because we vacate the judgment against these two defendants and remand for a new trial, we must also vacate the portion of the attorney's fee award that pertains to the prosecution of their claims. See generally Kentucky v. Graham, 473 U.S. 159, 164-65, 105 S.Ct. 3099, 3104-05, 87 L.Ed.2d 114 (1985) (liability on merits and obligation to pay attorney's fees go together). Naturally, because Williams challenges neither his liability on the merits nor the award of attorney's fees, we do not disturb that part of attorney's fee award assessed against Williams.
 
 IV. Conclusion
 
 35
 We hold that the district court erred in applying collateral estoppel to preclude Amerson and the county from litigating the issue of the rape. Consequently, the judgments against Amerson and the county must be vacated, and the case remanded for a new trial. We hold that Amerson and the county are immune from state tort liability under state law. We hold further that Amerson is entitled to immunity to suit against him in his official capacity on the federal claims. We affirm the district court's determination that Sheriff Amerson is not entitled to assert qualified immunity as a defense to suit against him in his individual capacity. We affirm the district court's conclusion that the county may be held liable under section 1983 for injuries caused to Parker by the county's personnel policies, although we remand the case for a redetermination that Amerson's hiring policy caused Parker's injuries. Finally, we affirm the district court's assessment of attorney's fees only insofar as they relate to Parker's action against defendant Williams, and vacate the award of attorney's fees against Amerson and the county.
 
 
 36
 We recognize the seeming harshness of this result, coming as it does after a full jury trial, full briefing by the parties, certification of a question to the Alabama Supreme Court, supplemental briefing by the parties, and oral argument before this Court. We also recognize that the delay between the events giving rise to this action and the ultimate resolution of the dispute could cause undue hardship to the parties. Nevertheless, procedural due process is an absolute right protected by our Constitution, and an opportunity to be heard on an issue is an essential element of procedural due process. The denial of an opportunity to litigate can never be harmless error. A party must have his day in court. Although the result in this case may work a hardship on the plaintiff with no change in the ultimate result, every party must have the opportunity to participate in the processes which may affect his or her rights in a significant manner. The district court erroneously denied Amerson and the county that opportunity in this case. Consequently, we VACATE the judgments against Sheriff Amerson and Macon County, and REVERSE and REMAND this case to the district court for a new trial.
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 Technically, the Court in this case is applying Alabama collateral estoppel law, even though the suit was filed in federal district court. See University of Tennessee v. Elliot, 478 U.S. 788, 796, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986). The result is the same whether we apply state or federal law. Both the Fifth and the Fourteenth Amendments prohibit a court from granting preclusive effect to a prior determination of an issue without the precluded party having had the opportunity to contest that issue
 
 
 [2]
 Defendant Williams had his opportunity to litigate the fact of the rape in his state criminal proceeding. Therefore, collateral estoppel was available to preclude him from relitigating the issue in this case
 
 
 [3]
 A state may also be sued in federal court if Congress expressly overrides the state's immunity pursuant to its authority under the Fourteenth Amendment. Pennhurst, 465 U.S. at 99, 104 S.Ct. at 907. Congress did not override the states' immunity in enacting section 1983. Quern v. Jordan, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979)
 
 
 [4]
 Because suits against an official in his or her official capacity are suits against the entity the individual represents, we assume that this suit against Amerson in his official capacity is simply a recharacterization of a claim against the State of Alabama. See Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3105-06 n. 14, 87 L.Ed.2d 114 (1985). As such, the Eleventh Amendment bars the award of damages for past injuries because such damages would be paid out of state funds. See generally Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). To the extent this claim may be against Amerson as representative of the county, Parker will suffer no prejudice from a finding that the Eleventh Amendment bars the claim. Parker can and did sue the county directly
 
 
 [5]
 The protections afforded pre-trial detainees by the due process clause exceed those provided to convicted inmates by the Eighth Amendment. Massachusetts General Hospital, 463 U.S. at 244, 103 S.Ct. at 2983. For example, pre-trial detainees are entitled to reasonable medical care in the absence of a legitimate governmental objection, while prison inmates only have the right to be free from deliberately indifferent medical treatment. See, e.g., Cupit v. Jones, 835 F.2d 82, 84-85 (5th Cir.1987)
 
 
 [6]
 That right was clearly established at the time of the incidents challenged in this case. See Ingraham v. Wright, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413-14, 51 L.Ed.2d 711 (1977)
 
 
 [7]
 The fact that Amerson may have been acting pursuant to a county policy or custom does not change this conclusion. Where there is a deficient governmental custom or policy, and a link exists between that custom or policy and a constitutional violation stemming from the implementation of the custom or policy, the injured party has a cause of action against the individual implementing the policy as well as against the governmental entity. See, e.g., Fundiller v. City of Cooper, 777 F.2d 1436 (11th Cir.1985)
 
 
 [8]
 Section 14-6-1 reads in full: "The sheriff has the legal custody and charge of the jail in his county and all prisoners committed thereto, except in cases otherwise provided by law, and may appoint a jailer for whose acts he is civilly responsible." The Alabama Supreme Court stated that this violates the state constitution "[t]o the extent that it purports to impose civil liability on a sheriff for the acts of a jailer appointed by the sheriff." Parker, 519 So.2d at 446
 
 
 [9]
 The court in Crane addressed a situation very similar to this case where state law designated the district attorney a state official. The court rejected the argument that such designation necessarily insulated the county from section 1983 liability. The court stated, "[E]ven were he a State official in every sense, called so in State law and designated by the State to make policy for its other creature, the county, our answer would likely remain the same; county responsibility for violation of the Constitution cannot be evaded by such ingenious arrangements." Id. There is little in this description to distinguish the Texas district attorney from the Alabama sheriff
 
 
 [10]
 From a policy point of view, county liability where the county has limited control over policy decisionmakers does not strike us as misplaced. The fact that a sheriff executes county policy with considerable autonomy from the county is undercut by the sheriff's dependence on county voters. Arguably, because an Alabama sheriff is voted into office by county residents, the sheriff is more accountable to the county electorate than to the county government. A finding of liability against the county translates into compensatory damages against the taxpayers of the county. One thus comes full circle to the electorate's capacity to control the sheriff: "[T]he compensatory damages that are available against a municipality may themselves induce the public to vote the wrongdoers out of office." Newport v. Fact Concerts, Inc., 453 U.S. 247, 269, 101 S.Ct. 2748, 2760-61, 69 L.Ed.2d 616 (1981). County liability for policies established by ultimate repositories of county power creates an incentive for deterring unconstitutional conduct in the future