922 F.2d 1553
 18 Fed.R.Serv.3d 831
 Donald Eugene MOORE, Plaintiff-Appellant,
v.
James C. MORGAN and County Commissioners; John Crowder;
A.C. Farrington; Doss Leak; Mack Sanders; J.H.
Richardson, Defendants-Appellees.
Donald Eugene MOORE, Plaintiff-Appellant,
v.
James C. MORGAN; County Commissioners Emerson Thompson;
Morris Garrett; Mary Sue Smith; Mack Sanders;
Doss Leak, Defendants-Appellees.
 No. 89-7444.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 7, 1991.
 
 Dennis N. Balske, Montgomery, Ala., for plaintiff-appellant.
 Sydney S. Smith, Smith & Smith, P.C., Phenix City, Ala., Ann Tucker, LaFayette, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before HATCHETT and ANDERSON, Circuit Judges, and ESCHBACH*, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 In this civil rights case against a sheriff and the county commissioners of an Alabama county, we reverse the district court because the magistrate judge improperly injected into the case the defense of qualified immunity.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 On January 20, 1987, Donald Moore, an Alabama prisoner acting without the assistance of counsel, filed two complaints pursuant to 42 U.S.C. Sec. 1983, in which he named as defendants James C. Morgan, the Sheriff of Chambers County, Alabama, and the "County Commissioners, et al." In one complaint, he alleged deliberate indifference to his serious medical problems and failure to provide him with various aspects of medical treatment during his incarceration in the Chambers County jail from mid-1981 to mid-1982. In the other complaint, he alleged that the conditions of the Chambers County jail, during his confinement in mid-1985 and mid-1986, were unconstitutional due to overcrowding and other factors. Moore later filed a list naming individually those county commissioners who served during the relevant time periods for each lawsuit. The magistrate judge treated these lists as motions to add parties, and granted the motions.
 
 
 3
 Morgan and the county commissioners did not by answer or motion plead the affirmative defense of qualified immunity. After trial of the case in January, 1988, the magistrate judge, without request, ordered the parties to file briefs on the issue of qualified immunity. In June, 1988, the magistrate judge conducted a supplemental evidentiary hearing devoted solely to this issue. The magistrate judge had earlier ruled that Moore had not established a deliberate indifference claim, but that Moore proved the conditions at the Chambers County jail violated the eighth amendment's prohibition against cruel and unusual punishment due to overcrowding and lack of out-of-cell time.[1] Nonetheless, after the hearing, the magistrate judge concluded that the sheriff and county commissioners were immune from damages because of the doctrine of qualified immunity.
 
 
 4
 On May 12, 1989, the district court issued an order adopting the magistrate judge's recommendation that Morgan and the commissioners were immune from damages arising out of the unconstitutional jail conditions because of qualified immunity, and directed judgment against Moore and for Morgan and the commissioners.
 
 CONTENTIONS
 
 5
 Moore contends that he sued Morgan and the commissioners in both their official and individual capacities. Moore also contends that the district court erred in reaching the question of qualified immunity, both because Morgan and the commissioners did not raise this affirmative defense either by answer or motion and because municipal entities are not entitled to such an immunity from a claim for compensatory damages. Finally, Moore contends that even if Morgan and the commissioners did not waive the defense of qualified immunity, they did not meet their burden of establishing the defense.
 
 
 6
 Morgan contends that he is entitled to absolute immunity in his official capacity as sheriff of Chambers County, Alabama. Morgan also contends that the district court properly applied the defense of qualified immunity to Moore's claim against him in his individual capacity.
 
 
 7
 The commissioners contend that the county never received proper notice of Moore's lawsuit. They also contend that they have not been joined in their individual capacities, but only in their official capacities. Finally, the commissioners contend that in their individual capacities, they were properly held not liable for monetary damages because of the qualified immunity defense.
 
 ISSUE
 
 8
 The issue is: whether the district court erred in holding that Morgan and the county commissioners are entitled to qualified immunity.DISCUSSION
 
 
 9
 Because the availability of qualified immunity is a question of law, the district court's decision is subject to plenary review. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir.1989).
 
 I. The Official Capacity Claim
 
 10
 We have held that it is the county, "not the state, [that] has the responsibility for running the county jail under Alabama law."[2] Parker v. Williams, 862 F.2d at 1479. Moreover, an action against a county official acting in his official capacity imposes liability on the entity that the official represents, so long as the entity received notice and an opportunity to be heard. Parker, 862 F.2d at 1475 (citing Brandon v. Holt, 469 U.S. 464, 471-72, 105 S.Ct. 873, 877-78, 83 L.Ed.2d 878 (1985)). Although the commissioners initially argue that Chambers County did not receive notice that it was being sued, that claim belies the record. When Moore filed his lawsuit, he named the "County Commissioners, et al." as defendants. In their brief, the commissioners acknowledged that they were named in their official capacities.[3] We conclude that the county had sufficient notice.
 
 
 11
 The commissioners next argue that they are not liable in their official capacities because they have the benefit of the qualified immunity defense. This contention is plainly wrong. Municipal entities are not protected from compensatory damages by the doctrine of qualified immunity. Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 reh'g denied, 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980). Thus, the district court mistakenly applied the defense of qualified immunity to Moore's claims against the commissioners in their official capacities.
 
 
 12
 As to the merits of Moore's action, we conclude, based on the undisputed facts, that he is entitled to relief. If the action that is alleged to be unconstitutional implements or executes a municipal policy or custom, the municipal body may be held liable for monetary relief. Monell v. Department of Social Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). "A policy or custom generally applies to a course of action chosen from among various alternatives." Anderson v. City of Atlanta, 778 F.2d 678, 685 (11th Cir.1985) (city responsible in money damages for death of pretrial detainee, where detainee of city jail died from drug overdose, due to inattention from understaffed jail personnel, and city had custom or policy of inadequately staffing the jail).
 
 
 13
 In this case, faced with the duty of maintaining the county jail, Chambers County failed to satisfy its constitutional responsibility. In 1982, when the Chambers County jail began to become overcrowded, the sheriff and the county commissioners discussed ways to solve the space problem. The county authorized a study to explore the possibility of constructing a new jail, but took no action at that time. In August, 1986, the sheriff again approached the county commission and requested that the county take action on funding a new jail. The commissioners authorized a straw vote to be placed on the November 5, 1986 ballot. By this vote, the citizens chose to construct a new jail and to finance it through the use of a one-cent sales tax. The commissioners then asked the state legislative delegation to introduce legislation for a binding referendum on the jail and the new jail funding issue, but the delegation did not do so. The Chambers County legislative delegation informed the county commission that it would not introduce any legislation authorizing the county to levy a new tax unless the voters approved it in advance by referendum. On March 8, 1988, by referendum, the voters overwhelmingly rejected the proposal to levy a tax to build a new jail.
 
 
 14
 After Moore brought this case against the county, however, the commissioners bought a facility to house 25 inmates, authorized the hiring of 4 jailers, and by cutting funding from other county agencies provided funds to construct a new jail facility with 100 to 200 beds. Construction of a new jail was ultimately financed by a bond issue to be retired by legislatively-enacted tangible personal property rental taxes, excise taxes, and assessments to costs in criminal court cases. The ways in which the commissioners actually obtained the money to finance the necessary jail improvements, when put under the threat of litigation, provides compelling evidence of the fact that the commissioners could have taken steps to improve the jail at a much earlier date.[4] The commissioners' policy of delayed action, and the unconstitutional conditions in the jail that resulted, render the commissioners liable in their official capacities, and consequently the county, liable. Monell, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
 
 II. The Individual Capacity Claim
 
 15
 Qualified immunity is an affirmative defense to personal liability that the defendant has the burden of pleading. Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). The failure to plead qualified immunity may result in a waiver of the defense. Barrett v. Thomas, 649 F.2d 1193, 1201 (5th Cir.1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 440 (1982). In this case, because Morgan and the commissioners never raised this affirmative defense, we hold that it was waived. Downing v. Williams, 624 F.2d 612, 626 n. 23 (5th Cir.1980), vacated on other grounds, 645 F.2d 1226 (5th Cir.1981) (en banc).[5]
 
 
 16
 The county commissioners argue that they were never joined in their individual capacities. The record proves otherwise. Moore initially brought this lawsuit against James C. Morgan and the "County Commissioners, et al." He later amended his complaint by listing the individual names of the county commissioners as additional defendants. On February 25, 1987, the magistrate judge entered an order construing the lists filed by Moore to be a motion to add defendants. At this point, the commissioners were on notice that Moore was not only seeking damages against the county, but that he was also seeking damages against them in their individual capacities.
 
 
 17
 Morgan and the commissioners next argue that the magistrate judge properly allowed consideration of the defense of qualified immunity. Federal Rule of Civil Procedure 15(b) provides that when issues are tried by implied consent of the parties, those issues will be treated as having been raised in the pleadings. The rule further provides that the failure to amend does not affect the result of the trial on the issues. Morgan and the commissioners assert that because facts relevant to a qualified immunity defense were heard during the trial, and because Moore filed a brief at the qualified immunity hearing, Moore was aware of the fact that qualified immunity was an issue in the case and had an opportunity to address it.
 
 
 18
 A careful examination of the record, however, reveals no evidence to suggest that Moore knew that qualified immunity was at issue or that the commissioners had an obligation to raise the affirmative defense of qualified immunity. This situation is unlike that presented in Wilson v. Attaway, 757 F.2d 1227 (11th Cir.1985). In Wilson, we found that the contents of a pretrial order and subsequent events put the issue of qualified immunity in issue; so, plaintiffs could not assert that defendants had failed to timely plead the defense. Wilson, at 1246-47. In this case, not only was no pretrial order entered, but no pretrial hearing was ever held. Neither the issue, nor the words, of qualified immunity was ever raised before or during trial. Moreover, a plaintiff acting without the assistance of counsel is not likely to object to a court's order to conduct a hearing, particularly when the magistrate judge was not prompted by any motion of the opposing party.
 
 
 19
 While it is true that Fed.R.Civ.P. 15(b) allows issues to be tried by the implied consent of the parties, it cannot be said that Moore gave either express or implied consent to the trial of the qualified immunity issue. Thus, the magistrate judge improperly injected the issue of qualified immunity into the case.[6] Cf. Williams v. Life Savings and Loan, 802 F.2d 1200, 1202 (10th Cir.1986) (a court should not sua sponte dismiss an action when it is possible that the defendant would waive the basis for dismissal by failing to plead a required affirmative defense).
 
 CONCLUSION
 
 20
 We affirm the undisputed finding that the conditions of the Chambers County jail violated the eighth amendment at the time of Moore's incarceration. We reverse the district court's ruling which allowed consideration of the defense of qualified immunity for Morgan and the county commissioners, either in their official or individual capacities.
 
 
 21
 In light of the reasons stated above, this case is remanded to the district court to determine damages against the appropriate parties.
 
 
 22
 AFFIRMED in part, REVERSED in part, and REMANDED
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 Specifically, the magistrate judge found that:
 No one can seriously argue that the Chambers County Jail was not unconstitutionally overcrowded while the plaintiff was there. The undisputed testimony is that the population was usually close to double its capacity. Inmates routinely slept on the floor in already crowded cells where there was absolutely no privacy. They were squeezed together in spaces barely adequate to house half their number. Inmates housed in the bullpens had less than 15 square feet of living space after the size of the bunks is taken into account. Inmates housed in cells had more square feet available to them (20-22), but were still incredibly crowded. The square footage provided the inmates in the jail while the plaintiff was there does not come close to any known standard.
 The overcrowding in the jail was cruelly exacerbated by the fact that the inmates during the time period relevant to this suit were confined to their cells round the clock. They ate in their cells, defecated in their cells, slept in their cells, and visited in their cells. They were not allowed outside of their cells for any activity.
 
 
 [2]
 The magistrate judge correctly noted that the sheriff, a state official in Alabama, is absolutely immune under the eleventh amendment from suit in his official capacity. Parker v. Williams, 862 F.2d 1471, 1475-76 (11th Cir.1989)
 
 
 [3]
 The commissioners argued in their supplemental brief that Moore's claim should be rejected because Moore did not comply with the statutory notice requirements of Alabama state law. The commissioners did not assert this defense at any time during the course of the litigation in the district court. Because " '[i]t is not the practice of this court to consider issues on appeal not raised in the district court,' " we decline to consider the merits of that claim. United States v. Johnson, 889 F.2d 1032, 1035 (11th Cir.1989) (quoting Allen v. Alabama, 728 F.2d 1384, 1387 (11th Cir.1984)). Had the claim been properly asserted at the district court level, we would likely reject it. Cf. Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (Wisconsin statute requiring notice of claim, prior to state-court suit against local government, held inapplicable, under the principles of federalism and the supremacy clause of the Federal Constitution, to 42 U.S.C.S. Sec. 1983 action brought in state court)
 
 
 [4]
 It should be noted that lack of funds for facilities does not justify the maintenance of unconstitutional jail conditions. See Anderson v. City of Atlanta, 778 F.2d at 688 n. 14 (lack of funds cannot justify an unconstitutional lack of competent medical care of inmates); Smith v. Sullivan, 611 F.2d 1039, 1043-44 (5th Cir.1980)
 
 
 [5]
 The sheriff, immune to suit in his official capacity, can be sued in his individual capacity. Parker v. Williams, 862 F.2d at 1476
 
 
 [6]
 Having improperly allowed the issue of qualified immunity to be briefed, the magistrate judge improperly analyzed the issue. He correctly stated that the test for qualified immunity is an objective one: whether reasonable county commissioners could have concluded their conduct to be lawful in light of clearly established law and the information they possessed. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Yet, the magistrate judge found that the commissioners could have reasonably believed that their conduct was lawful because they had successfully litigated the overcrowding issue in earlier lawsuits and because they were taking reasonable steps to solve the problems. In light of the fact that the magistrate judge had earlier found the jail conditions clearly unconstitutional, that the county is responsible for the jail, that four of the five earlier lawsuits had been settled out of court, and that the steps the county took changed dramatically after Moore pressed on with his suit, it cannot be said that a reasonable Chambers County commissioner could have concluded that their conduct did not violate Moore's clearly established constitutional rights