Selena WASHINGTON, et al., Plaintiffs,

v.

Robert VOGEL, etc., et al., Defendants.

No. 93–482–CIV–ORL–22.

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 25, 1995.

Luis F. Gomez, Orlando, FL, Charles Gilbert Burr, III, Melanie Locklear, Charles G. Burr, P.A., Tampa, FL, E.E. Edwards, Edwards & Simmons, P.A., Nashville, TN, James Edward Clark Perry, Law Office of James E.C. Perry, Orlando, FL, for Selena Washington.

Luis F. Gomez, Orlando, FL, Charles Gilbert Burr, III, Melanie Locklear, Tampa, FL, Dennis Courtland Hayes, Willie Abrams, NAACP Special Contribution Fund, Baltimore, MD, E.E. Edwards, Edwards & Simmons, P.A., Nashville, TN, James Edward Clark Perry, Law Offices of James E.C. Perry, Orlando, FL, for Florida State Conference of NAACP Branches.

Luis F. Gomez, Orlando, FL, Charles Gilbert Burr, III, Tampa, FL, E.E. Edwards, Edwards & Simmons, P.A., Nashville, TN, James Edward Clark Perry, Law Offices of James E.C. Perry, Orlando, FL, for Jorge Nater.

David V. Kornreich, Jeffrey E. Mandel, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, P.A., Orlando, FL, for Robert Vogel, Sheriff of Volusia County, FL and Volusia County, FL.

## ORDER

CONWAY, District Judge.

On January 13, 1995, at the conclusion of the Plaintiffs' case during the trial of this action, the Court granted the Defendants' motion for judgment as a matter of law, brought pursuant to Fed.R.Civ.P. 50(a). At the time it ruled, the Court stated on the record the bases for its ruling. The purpose of this Order is to amplify on the reasons underpinning the Rule 50 ruling, and to direct the Clerk to enter judgment in accordance with that ruling.

### Introduction

At trial, the Plaintiffs sought to prove that Plaintiff Selena Washington was stopped on Interstate 95 by a member of the Volusia County Sheriff's Office Selective Enforcement Team on the basis of her race, and that Plaintiff Jorge Nater was stopped on the basis on his national origin. The Plaintiffs further attempted to show that Sheriff Robert Vogel and the County of Volusia had a custom or policy of targeting African–American and Hispanic motorists on Interstate 95, and of stopping those motorists on pretext for the purpose of seizing U.S. currency. The Plaintiffs claimed damages pursuant to 42 U.S.C. § 1983 on the basis that the Defendants' alleged conduct violated their Fourth Amendment and Equal Protection rights. Without objection by the Defendants, the Plaintiffs' separate claims were tried together.

In their Joint Pretrial Stipulation, the parties agreed that to prevail, the "Plaintiffs must show that the contested actions were taken pursuant to official municipal policy, practice, or custom, and that the action caused a constitutional injury." Dkt. 185 at 18. However, the parties further agreed that "before the issue of § 1983 liability can arise, Plaintiffs first must clearly demonstrate that an express violation of a specific constitutional right has occurred." Dkt. 185 at 19 (citing *Vineyard v. County of Murray*, 990 F.2d 1207 (11th Cir.1993) and *Parker v. Williams*, 862 F.2d 1471 (11th Cir.1989)).

### Rule 50(a) Standard

Fed.R.Civ.P. 50(a)(1) provides, in pertinent part, as follows:

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim ... that cannot under the controlling law be maintained ... without a favorable finding on that issue.

■ A Rule 50 movant is entitled to judgment as a matter of law " 'if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof.' " *Bryan v. James E. Holmes Reg. Med. Ctr.*, 33 F.3d 1318, 1333 (11th Cir.1994) (quoting *Smith v. U.S.*, 894 F.2d 1549, 1552 (11th Cir.1990)). In other words, if no reasonable jury could find that the nonmoving party has carried his burden of proof on an essential element of his claim with respect to which he bears the burden of proof, the movant is entitled to judgment as a matter of law. *See Smith*, 894 F.2d at 1554 ("[B]ecause no reasonable jury could find that Smith carried his burden of proof on the issue of willfulness, the Government was entitled to a directed verdict[1] on that issue").

### Plaintiffs' Claims

Both Washington and Nater were passengers in vehicles that were stopped by the SET Unit. The Washington vehicle was stopped for allegedly exceeding the posted speed limit (72 m.p.h. in a 65 m.p.h. zone). The vehicle in which Nater was riding was stopped for allegedly following another vehicle too closely. The drivers of the two vehicles denied committing the traffic violations. The Plaintiffs sought to prove that the articulated reasons for the traffic stops were pretextual, and that the stops were in fact moti-

---

1. *Smith* was decided pursuant to the now-superseded "directed verdict" standard. However, *Bryan*'s citation of *Smith* indicates that the reasoning and standards set forth in the latter case apply equally in evaluating Rule 50 motions for judgment as a matter of law.

vated by their race (Washington) and national origin (Nater).[2]

■ To succeed on their claim of pretext, the Plaintiffs were each required to prove that a reasonable police officer would not have made the traffic stops "in the absence of illegitimate motivation." *U.S. v. Smith*, 799 F.2d 704, 708 (11th Cir.1986); *U.S. v. Hardy*, 855 F.2d 753, 756 (11th Cir.1988) (quoting *Smith* ), *cert. denied*, 489 U.S. 1019, 109 S.Ct. 1137, 103 L.Ed.2d 198 (1989). In the instant case, the asserted "illegitimate motivation" was race—and national origin—based discrimination.

■ There was no evidence from which a reasonable jury could find that the deputies who made the traffic stops knew that the occupants of the Washington vehicle were African–American, or that the occupants of the Nater vehicle were Hispanic. In that regard, Deputy Frederick, who stopped the vehicle in which Washington was travelling, testified that he did not know the race of the occupants until after he stopped the vehicle. Deputy Almodovar, who is himself Puerto Rican, stopped the vehicle in which Nater was riding. Almodovar also testified that he did not know that the occupants of the Nater vehicle were Hispanic when he stopped them. He further testified that he sometimes could not tell whether a person was Hispanic merely by looking at him, or even after hearing him speak.[3]

The mere denial by the driver or occupants of a vehicle that the driver committed a traffic violation is insufficient, without more, for a reasonable jury to find that traffic stop was pretextual, and therefore race—or national origin—based. If this were true, every African–American and Hispanic driver or passenger stopped by any law enforcement officer for any traffic violation could "get to the jury" on claims such as these simply by denying that the driver committed the traffic offense.[4]

For these reasons, the Plaintiffs did not present sufficient evidence from which a reasonable jury could find that the two particular traffic stops at issue in this case were pretextual, and were actually motivated by Washington's race and Nater's national origin.

Plaintiffs also did not present evidence from which a reasonable jury could conclude that Washington and Nater were treated differently than similarly-situated whites. No evidence was presented that whites were not stopped for the same, or similar, violations. Further, a jury could not reasonably draw conclusions from videotapes of stops presented by the Plaintiffs, since it appears that in most instances traffic violations were not captured on tape. Rather, most, if not all, of the videotapes shown to the jury depicted events which occurred after the traffic violations were allegedly committed. Moreover, not all stops were videotaped, and videotapes of some stops were not preserved. In that connection, there was testimony that if the stop did not result in a "case", a videotape depicting that stop might be re-used to record another stop. As a result of these circumstances, a reasonable jury could not view the videotapes as being representative of SET Unit stops, and could not reasonably make any comparisons between the stops of the Plaintiffs and other stops depicted on the videotapes. For that reason, the jury could not reasonably draw any conclusions, relevant to Washington and Nater, from the fact

2. Pretrial, the Plaintiffs also separately sought damages for the searches and seizures that took place after the initial traffic stops. However, at trial, the Plaintiffs expressly abandoned any such claims, announcing that they sought to challenge only the initial stops.

3. Whether a person can routinely by identified as Hispanic merely by physical appearance is uncertain. While the parties were able to agree on whether persons depicted on videotapes of some of the traffic stops were African–American, they were unable reach a similar agreement with respect to persons thought to be Hispanic.

4. The Plaintiffs did not present any other evidence from which a reasonable jury could find that a reasonable officer would not have stopped the vehicles in which Washington or Nater were riding for the particular traffic offenses their drivers were alleged to have committed. The Plaintiffs elected not to call as trial witnesses police standards experts who presumably could have offered opinions on those issues. In the Joint Pretrial Stipulation, Plaintiffs listed two police standards experts as trial witnesses. *See* Dkt. 185 at 8–9.

that greater than 60% of stops on existing videotapes were of blacks.

This brings the Court to the Plaintiffs' "custom or policy" evidence. Plaintiffs sought to prove, by various means, that the Defendants had a custom or policy of targeting African–Americans and Hispanics. However, that a governmental entity had a particular custom or policy is relevant only if there was an underlying constitutional violation caused by that custom or policy. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have **authorized** the use of constitutionally excessive force is quite beside the point").

As previously noted, the Plaintiffs failed to present a jury question concerning whether they, in particular, were stopped on the basis of their race and national origin. Pursuant to *Heller,* it is therefore irrelevant that the Defendants might have had a custom or policy of targeting minorities on I–95. Accordingly, the "custom or policy" evidence could not assist Plaintiffs in reaching a jury, absent evidence from which a reasonable jury could find that these particular Plaintiffs were stopped because they were African–American and Hispanic.

### Conclusion

Based on the foregoing, it is ORDERED that the Clerk shall enter a judgment providing that, pursuant to the Court's January 13, 1995 ruling granting the Defendants' Fed. R.Civ.P. 50(a) motion for judgment as a matter of law, the Plaintiffs shall take nothing on their claims against the Defendants.

DONE AND ORDERED.