J.T. CARR, Eva Carr, Joey Casey Carr, Kristen Carr and Angelaine Carr; minors, by and through their father and next friend Sheila Carr, Ronald Phillips, Florine Phillips, Sherry Phillips, Ronald Phillips, as father and next friend of Patricia Phillips, and Gaylon Phillips, minors, Plaintiffs–Appellants, Cross–Appellees,

Lonnie Carr, Scottie L. Carr as husband and next friend of Jennifer Vinson Carr, a minor, Plaintiffs,

v.

CITY OF FLORENCE, ALABAMA a Municipal Corporation; Lauderdale County, Alabama, Richard Thompson, as Police Chief of the City of Florence, Alabama; Franklin County, Alabama, City of Russellville, Alabama, a Municipal Corporation; Colbert County, Alabama; City of Rogersville, Alabama, a Municipal Corporation; City of Killen, Alabama, a Municipal Corporation; Timothy "Tim" Harvey, a police officer of the City of Florence, Alabama; Donnie McGuire, individually and as Police Chief of the City of Russellville, Alabama; Jim Martin, individually and as Chief Deputy Sheriff of Franklin Coun-

ty, Alabama; Steve Anderson, Myron Crunk, Robert Freeman, John Gillette, Keith Johnson, Jane Patterson; Marty Ray and Harold White "Curtis", Steve Bradford and Mark Parker, Defendants,

Mike Boggans; Charles Ford; Charles Perkins; Deputy Richard Richey; Kent Sims; Clifford Whitten; Sheriff Billy Townsend, Acting in his Official Capacity as Sheriff of Defendant, Lauderdale County, Alabama, Defendants–Appellees, Cross–Appellants.

No. 89–7488.

United States Court of Appeals,
Eleventh Circuit.

Nov. 7, 1990.

See also 729 F.Supp. 783.

Susan J. Walker, Birmingham, Ala., Gary P. Smith, Florence, Ala., Clarence L. McDorman, Jr., Susan J. Walker, Birmingham, Ala., for plaintiffs-appellants, cross-appellees.

Sharon D. Hindman, Dennis Riley, Morring, Schrimsher & Riley, Huntsville, Ala., for defendants-appellees, cross-appellants.

Before HATCHETT and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this section 1983 lawsuit, we affirm the district court's ruling that the sheriff of Lauderdale County, Alabama, and his deputies are immune from a lawsuit for damages in their official capacities under the eleventh amendment to the United States Constitution.

## FACTS

At approximately 10:30 p.m. on May 12, 1988, officers of the police department of the City of Florence, Alabama, chased two men in a light-colored automobile because the officers suspected that the men had been involved in a drug deal. After a six and a half mile chase, the suspects pulled the automobile into a field and abandoned it. The Florence police officers requested that the Lauderdale Sheriff's Department help in searching for the suspects.

The details of what happened next are sketchy and of little importance to the issue we decide. At approximately 11:30 p.m. on May 12, 1988, a truck driven by Mark Fuqua struck Sergeant Dolan and Officer Ticer of the Florence Police Department. Officer Ticer subsequently died from his injuries. After being struck, Sergeant Dolan radioed a dispatch of "officer down." Officers from several jurisdictions responded to this call. Although the connection between the automobile chase and the injury to Officer Ticer is not clear from the record, the search for the two suspects intensified after the officer's death. Eventually, canine units led officers to the Phillips' residence, and then the search proceeded to the Carr residence after the police learned that Scottie Carr owned the automobile that had been involved in the chase.

At the heart of this lawsuit are allegations that the Phillips home and the Carr home were searched without a warrant, and that the occupants were verbally and physically abused. A single incident from the evening will serve as an example of the allegations. The district court found that officer Timothy Harvey struck J.T. Carr on the side of the head, knocking him down. At the time, Harvey was questioning Carr concerning the whereabouts of the car-chase suspects, Scottie and Lonnie Carr. Harvey admitted in deposition that he struck Carr after losing his temper. Another officer testified that Carr was handcuffed when struck, and a videotape revealed that at that time several officers had their weapons drawn, although Carr was not under arrest, not resisting arrest, and not armed.

## PROCEDURAL HISTORY

The Phillips and the Carrs ("the appellants") brought this lawsuit against the City of Florence, officers of the Florence Police Department, the County of Lauderdale, Sheriff Billy Townsend, and Deputies Mike Boggans, Charles Ford, Charles Perkins, Richard Richey, Kent Sims, and Clifford Whitten.[1] The appellants claim viola-

---

1. The complaint also named several other juris-    dictions and law enforcement officers who were

tions of their fifth and fourteenth amendment rights and various state law violations. On May 31, 1989, the district court granted summary judgment to Sheriff Billy Townsend in his official capacity, ruling that the Sheriff was immune from suit under the eleventh amendment. On July 16, 1989, the district court amended the May 31st order by also granting summary judgment to the sheriff's deputies in their official capacities. Because of the appeals taken from the summary judgment orders, the district court bifurcated the case to allow the remaining defendants to proceed to trial.

## CONTENTIONS OF THE PARTIES

The appellants contend that neither the sheriff nor his deputies are entitled to absolute immunity based on the eleventh amendment, for two reasons. First, they argue that the acts complained of fall within one of five exceptions to official immunity created under the Alabama Constitution. Second, they argue that the county pays both the sheriff and his deputies, and thus they should not be granted immunity as agents of the state. As cross-appellees, the Phillips and the Carrs contend that the district court properly refused to grant the sheriff and his deputies summary judgment based on qualified immunity because they have adequately alleged constitutional violations and material facts remain in dispute.

The sheriff and his deputies contend that they are entitled to absolute immunity based on the Alabama Constitution and precedent from this circuit. As cross-appellants, the sheriff and his deputies contend that they are entitled to qualified immunity in their individual capacities.

## ISSUES

We affirm the district court's judgment on its rulings of qualified immunity as to both the sheriff and his deputies. We also affirm the district court's ruling on the

sheriff's absolute immunity, and, as a question of first impression, we address whether deputy sheriffs in Alabama are entitled to absolute immunity.

## DISCUSSION

■■■ The eleventh amendment to the Constitution of the United States provides that:

[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

Although the express language of the amendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Lawsuits against a state official in his or her official capacity are suits against the state when "the state is the real, substantial party in interest." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). In these cases, the state is considered the real party in interest because an award of damages would be paid by the state. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974).

■■■ The courts have recognized two exceptions to eleventh amendment immunity. First, Congress can abrogate eleventh amendment immunity without the state's consent when it acts pursuant to the enforcement provisions of section 5 of the fourteenth amendment. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). Second, a state may waive its immunity expressly through legislative enactment.[2]

---

later dismissed.

**2.** A third exception is available in limited circumstances. Prospective injunctive relief may

be sought in "a suit challenging the constitutionality of a state official's action." *Pennhurst*, 465 U.S. at 102, 104 S.Ct. at 909 (discussing *Ex Parte*

"[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Neither of these exceptions apply in this case. Congress has not abrogated eleventh amendment immunity in section 1983 cases.[3] *Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1979). The state of Alabama has not waived its immunity. *Free v. Granger,* 887 F.2d 1552, 1557 (11th Cir.1989); *Parker v. Williams,* 862 F.2d 1471, 1476 (11th Cir. 1989). Article 1, section 14 of the Alabama Constitution of 1901 expressly states that "the State of Alabama shall never be made a defendant in any court of law or equity."

■ To determine whether a state official is covered by eleventh amendment immunity, we consider the laws of the state.[4] *See Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). In *Parker v. Williams,* 862 F.2d 1471 (11th Cir.1989), this court held that the eleventh amendment barred a section 1983 lawsuit against an Alabama sheriff in his official capacity.[5] In response to this court's certified question in *Parker,* the Supreme Court of Alabama held that a sheriff is an executive officer of the state of Alabama, and thus is immune from law-

suits under the state constitution, except for injunctive actions

(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

*Parker v. Amerson,* 519 So.2d 442, 443 (Ala.1987) (construing Ala. Const. art. I, § 14).

■ The appellants argue that the sheriff does not enjoy absolute immunity in this case because the acts complained of were committed in bad faith. This argument reflects a misunderstanding of the nature of the exceptions to immunity under the Alabama Constitution. As held by the Alabama Supreme Court, a sheriff may only be sued to *enjoin* him from acting in bad faith. In this case, The appellants do not seek an injunction; thus, they may not rely on the bad faith exception.

■ The question remains whether the sheriff's deputies are covered by the same immunity. The Alabama Constitution does not designate deputy sheriffs as members of the executive department or as state agents. Consequently, we examine the relationship between sheriffs and their deputies under Alabama law, the control that

Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). *See also Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Because the appellants seek only monetary relief, this narrow exception does not apply in this case.

3. States and their officials no longer need to rely exclusively on eleventh amendment immunity to avoid liability in their official capacities in section 1983 cases. In *Will v. Michigan Department of State Police,* —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that states and state officials acting in their official capacities are not "persons" subject to liability under 42 U.S.C. § 1983.

4. The same analysis of state law would be required to determine whether the sheriff and the sheriff's deputies are state officials in applying

the analysis of *Will v. Michigan Department of State Police.*

5. To determine whether a sheriff should be held liable for a rape committed by a jailer appointed by the sheriff, this court posed the following certified question to the Alabama Supreme Court:

Whether the sheriff of a county may be considered an 'employee' of the county for purposes of imposing liability on the county under a theory of respondeat superior?

*Parker v. Amerson,* 519 So.2d 442, 442 (Ala. 1987). The Alabama court reasoned that the sheriff enjoys absolute immunity based on the Alabama Constitution which provides that "[t]he executive department shall consist of a governor … and a sheriff for each county." Ala. Const. art. V, § 112.

the county exercises over the sheriffs and their deputies, and an important policy consideration underlying eleventh amendment immunity.

In *Terry v. Cook*, 866 F.2d 373, 377 (11th Cir.1989), we held that a sheriff could refuse to rehire politically disloyal deputies because of the "closeness and cooperation required between sheriffs and their deputies."

> Under Alabama law, a deputy sheriff is the general agent of and empowered to enter into business transactions for the sheriff. Any transaction within the sheriff's duties may be acted upon by his deputy. *Ramsey v. Strobach*, 52 Ala. 513, 515 (1875). The deputy sheriff is the alter ego of the sheriff, *Mosely v. Kennedy*, 245 Ala. 448, 17 So.2d 536, 537 (1944) (citations omitted), and the sheriff is civilly liable for actions committed by a deputy done in the performance of his duty. *Taylor v. Gibson*, 529 F.2d 709, 716 (5th Cir.1976). (Additional citations omitted).[6]

*Terry v. Cook*, 866 F.2d at 377. This pronouncement of Alabama law establishes that a deputy is legally an extension of the sheriff. If the deputy's acts are generally considered the acts of the sheriff, it is logical that those acts should also enjoy the immunity covering the sheriff's own acts. *See Mosely*, 17 So.2d at 537 ("In general, a deputy's acts are those of the sheriff....").

■ The appellants argue that the county personnel board's supervision of deputy sheriffs distinguishes deputies' relationship to the state from that of the sheriff. The Lauderdale County Civil Service Board reviews grievance matters and the termination of deputy sheriffs. The legislation governing Lauderdale County provides that the sheriff may fill any vacancies in his department "with the advice and consent of the Civil Service Board." 1971 Ala. Acts 1695, § 7. Any deputy with permanent status may be dismissed for good cause upon receipt of written notice of the cause;

the deputy may appeal such a decision to the Civil Service Board of Appeals. 1965 Ala. Acts 586, § 7. In addition, the sheriff may only appoint deputies who meet the age, education, and training requirements established in 1971 Ala. Act 1981, § 7.

Although the Civil Service Board has some control over the terms and conditions of the deputies' employment, we note that the sheriff appoints one of the three members of the Board. 1971 Ala. Acts 1695, § 2. Additionally, while the sheriff does not have complete discretion in hiring and firing deputies, the sheriff is able to handpick deputies from among qualified applicants. This freedom to personally choose deputies reflects the close working relationship and identification expected between the sheriff and the sheriff's deputies.

■ In determining whether a public officer is a state official within the protection of eleventh amendment immunity, the courts must inquire whether an award of damages would be paid with state funds. *Edelman v. Jordan*, 415 U.S. at 663, 94 S.Ct. at 1355. In *Parker v. Williams*, the court held that the eleventh amendment barred the award of damages against the sheriff because the funds would come from the state treasury. *See also Free v. Granger*, 887 F.2d at 1557 (damages award against Alabama sheriffs would be paid out of the state treasury). The appellants argue that because the deputies are paid by the county, they should not be considered state officials within eleventh amendment immunity. While it is true that the deputy sheriffs are paid by the county, the sheriff is also paid by the county. Ala.Code § 11–12–15(a)(2) (1987). Nevertheless, the sheriff is a state official, even though paid by the county.

The appellants do not argue that a damage award against the deputy sheriffs in their official capacities would be paid by the counties rather than the state. In the absence of clear evidence that the counties would pay a damages award against the deputy sheriffs, we cannot find that this

---

**6.** Black's Law Dictionary defines alter ego as "a second self." Black's Law Dictionary (5th ed. 1979).

policy consideration underlying eleventh amendment immunity defeats the deputies' claim to immunity. Therefore, we hold that the sheriff's eleventh amendment immunity also extends to deputy sheriffs because of their traditional function under Alabama law as the sheriff's alter ego.

## CONCLUSION

We affirm the district court on all issues, holding that Alabama deputy sheriffs are immune from suit in their official capacities under the eleventh amendment to the United States Constitution.

AFFIRMED.

CLARK, Circuit Judge, specially concurring:

Because I feel constrained to follow this circuit's prior decision in *Parker v. Williams*, 862 F.2d 1471 (11th Cir.1989) (*Parker II*), holding Alabama county sheriffs immune from suit under the Eleventh Amendment, I concur in the outcome of the decision. I write separately, however, to note that *Parker II* failed to distinguish properly between immunity under state law and immunity under the Eleventh Amendment. Therefore, neither Alabama county sheriffs or their deputies should be immune from suit in their official capacities.

In *Parker II*, this court did not independently evaluate the immunity status of Alabama sheriffs but simply relied on the determination of the Alabama Supreme Court.[1] Such reliance is clearly contrary to this circuit's precedents requiring that we look to, *among other things*, decisions of state courts in determining official immunity.

Significantly, *Parker II* conducted no analysis of whether the state of Alabama would be liable for judgments entered against county sheriffs but simply assumed that the state would have to pay the claims, as a result of its conclusion that a sheriff was a state official. For purposes of Eleventh Amendment analysis, however, this is tautological reasoning: Whether the state pays should be an *independent* factor in assessing official immunity.

This circuit held in *Travelers Indem. Co. v. School Bd.*, 666 F.2d 505 (11th Cir.), *cert. denied*, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982), that "Eleventh Amendment protection is available only if satisfaction of the judgment sought against the state 'agency' *must* under all circumstances, be paid out of state funds." *Id.* at 509 (emphasis in original) (relying on *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974)); *see also Lundgren v. McDaniel*, 814 F.2d 600, 605 n. 4 (11th Cir.1987). If in fact Alabama counties pay their sheriffs' and deputies' judgments, no Eleventh Amendment factors would be implicated—the sovereignty of the state of Alabama would not be impugned—and sheriffs and deputies should therefore have no official immunity.[2]

The proceedings below in this case did not establish who would pay a judgment, the state or the county. The majority cites *Parker II* and *Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir.1989), to show that any damages awards against an Alabama sheriff would be paid out of the state treasury.

---

1. *Parker v. Amerson*, 519 So.2d 442 (Ala.1987) (answering certified question from the Eleventh Circuit and holding Alabama county sheriffs immune from suit under state law). The withdrawn opinion in *Parker I* noted that this court could not rely solely on state court decisions in determining official immunity. But due to a paucity of evidence, *Parker I* held that it was not a "virtual certainty" that Alabama counties would be responsible for sheriffs' liability; *Parker I* therefore deemed sheriffs immune. *Parker v. Williams*, 855 F.2d 763, 766 n. 2 (11th Cir.1988) (*Parker I*), *withdrawn*, 862 F.2d 1471 (11th Cir.1989). The *Parker II* opinion simply restated the decision of the Alabama Supreme Court. 862 F.2d at 1475–76.

2. Where the immunity of Florida county sheriffs has been at issue, this court has examined the funding sources of the sheriffs' insurance. In *Hufford v. Rodgers*, 912 F.2d 1338 (11th Cir. 1990), we looked to the fact that Florida county sheriffs' liability insurance is paid for by the counties in determining that sheriffs did not share in the state's Eleventh Amendment immunity. *Id.*, at 1342. *See also Hattaway v. McMillian*, 903 F.2d 1440, 1452–55 (11th Cir.1990) (discussing insurance of Florida county sheriffs).

As discussed above, *Parker II* merely assumed that the state would pay the costs, and the statement in *Free* seems to stem from the same assumption. This approach completely reverses the appropriate judicial standard: *Edelman* and *Travelers Indem. Co.* both hold that entities are immune only if it is a "virtual certainty" that the *state* will foot the bill.[3] This is a fact question which must be determined in every case where Eleventh Amendment immunity is involved.

This case should be remanded for a determination of how the defendant Sheriff's office is funded.

**3.** *Edelman,* 415 U.S. at 668, 94 S.Ct. at 1358 ("[A retroactive award of monetary relief] will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action."); *Travelers Indem. Co.,* 666 F.2d at 509. *Parker II*'s reversal of the judicial standard perpetuates an error begun in the withdrawn opinion in *Parker I. See* 855 F.2d at 766 n. 2; *supra* note 1. ›