Sylvia TOTH, Plaintiff,

v.

The CITY OF DOTHAN, ALABAMA, Sheriff Lamar Hadden, and F.E. Ingram, officially and individually, Defendants.

Civil Action No. 95–D–1624–S.

United States District Court,
M.D. Alabama,
Southern Division.

Dec. 6, 1996.

Adam M. Porter, Birmingham, AL, David W. Graybeal, Norcross, GA, for plaintiff.

Derel K. Kelly, Gary C. Sherrer, Dothan, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is defendants F. Eddie Ingram ("Ingram") and former Sheriff Lamar Hadden's ("Hadden") motion for and brief in support of summary judgment filed September 19, 1996. The City of Dothan also filed a motion and brief in support of summary judgment on September 19, 1996.[1] Plaintiff, Sylvia Toth ("Toth"), filed an opposition brief to both motions for summary judgment on October 4, 1996. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendants' motions are due to be granted in part and denied in part.

## JURISDICTION

Based upon 28 U.S.C. §§ 1331,[2] 1343(a)(3)

---

1. The City of Dothan filed a brief in support of summary judgment but failed to file a separate motion for summary judgment on the plaintiff's claims against the City of Dothan. As a result, the court now construes the City of Dothan's brief as a motion for summary judgment as well as brief in support thereof.

2. Section 1331 designates district courts as "hav[ing] original jurisdiction of all civil actions

and (4),[3] and 1367,[4] the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction of venue.

## FINDINGS OF FACT

Plaintiff filed this civil action under 42 U.S.C. § 1983, alleging that her Fourth and Fourteenth Amendment rights were violated by the defendants. Compl. Specifically, plaintiff claims that defendants used excessive force in the execution of a search warrant and that she was subjected to an unreasonable search and seizure. *Id.* Additionally, plaintiff brings state law claims of invasion of privacy and trespass. *Id.*

Prior to December 24, 1993, a confidential informant reported to the Houston County Sheriff's Department that Zoltan Toth, husband of the plaintiff, was selling counterfeit merchandise out of his motel room. Ingram Aff. at 1. On December 24, 1993, the informant purchased some of the merchandise from Zoltan Toth and showed it to Ingram, an investigator with the Houston County Sheriff's Department.. *Id.* at 1–2. After examining the counterfeit merchandise, Ingram secured a search warrant, signed by a Houston County District Judge, authorizing the sheriff's department to search for "several dozen purses, wallets and watches ... falsely marked with legal trademarks of Dooney & Bourke and Rolex" in Room #127 at the Holiday Inn West, in Dothan, Alabama, where Zoltan Toth was believed to be residing and selling the illegal merchandise.[5] *Id.* at 2, Exhibit A (Search Warrant). While Ingram was obtaining the search warrant,

Sheriff Hadden stayed behind in order to observe Zoltan Toth's activities. Hadden Aff. at 2. After receiving a call from the informant, however, Hadden testified that he left the scene to meet with the informant; when he returned to the scene, Zoltan Toth's van was gone. *Id.*

At 11:46 p.m., on December 24, 1993, Ingram and Dothan City Police Officer Andy Hughes[6] ("Hughes") approached Room #127 at the Holiday Inn West, but before they could knock on the door, plaintiff, who was alone in the room, opened the door. Ingram Aff. at 2. Ingram and Hughes claim that they advised plaintiff they had a search warrant to search for counterfeit merchandise and that plaintiff allowed them to enter the room. *Id.* Hadden remained in his vehicle, observing the area for the return of Zoltan Toth's van. Hadden Aff. at 2. Hadden "checked" on the other two officers during their search of the room. *Id.* He was present for approximately one minute. Hughes Aff. at 3.

Plaintiff, however, recounts a very different version of the search. Plaintiff states that at or about 1:30 a.m. on the morning of December 25, 1993, she was alone in her motel room, which had one door and one window. Toth Aff. at 1. She heard a noise and upon opening the door to investigate, she was "confronted by numerous law enforcement officers around the door with drawn weapons that were immediately pointed at [her] body." *Id.* at 2. Plaintiff states that two officers pointed their firearms "at point blank range" at her head and then "burst

arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

**3.** Section 1343(a)(3) provides that district courts shall have original jurisdiction over civil actions brought "[t]o redress the deprivation, under color of any State law ... of any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." 28 U.S.C. § 1343(a)(3). Additionally, § 1343(a)(4) provides for original jurisdiction of civil actions commenced "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights." 28 U.S.C. § 1343.

**4.** Section 1367 provides district courts exercising original jurisdiction with supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367.

**5.** Room #127 was actually registered to "James Brown," a name believed to be an alias of Zoltan Toth. *See* Ingram Aff., Exhibit A (Search Warrant).

**6.** Although he is an officer with the City of Dothan police department, Hughes was working with the Houston County Sheriff's Department during the search of plaintiff's motel room because the Sheriff's Department had a shortage of officers that night. Hughes Aff. at 1.

into her motel room." *Id.* She further alleges that she never saw a search warrant, that Ingram pushed her and knocked her down, and that the defendants searched her room without her permission, threatening to arrest her and refusing to let her take medication for her diabetic condition. *Id.* She claims the defendants pushed her and struck her with a wooden baton and that she was held on the bed with the baton at her throat while the officers searched the room. *Id.* Plaintiff admits there was a gun in the room but claims that it was *in* a drawer. *Id.* Plaintiff alleges that the officers stayed for "what seemed like about an hour or more." *Id.*

Ingram describes plaintiff as "belligerent" but, nevertheless, denies that anyone at any time during the search "drew or used any weapons." Ingram Aff. at 2–3; *see also* Hughes Aff. at 3. Ingram and Hughes also deny that either of them ever touched, shoved, struck or used any other force whatsoever against plaintiff. They deny that plaintiff ever complained about being ill and requesting medicine. Ingram Aff. at 2–3; *see also* Hughes Aff. at 3. Finding only a .38 revolver "with extra [rounds] lying on the bedside table," the officers were unsuccessful in locating any counterfeit merchandise, and they testify that they left the motel approximately 15 minutes after entering the room. Ingram Aff. at 2–4; Hadden Aff. at 3; Hughes Aff. at 2–3.

Claiming to have suffered post-traumatic stress disorder and depression as a result of this incident, plaintiff brings this suit against Hadden and Ingram in their individual and official capacities as law enforcement officers. *Id.* at 4. Additionally, she brings this suit against the City of Dothan for its failure to adequately train the members of its police department in the law of search and seizure and appropriate use of force in the execution of a search warrant. Compl.

Primarily relying on the defense of immunity, all defendants have moved for summary judgment in this matter.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Supreme Court of the United States has noted, on the other hand, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

At the summary judgment stage, the court must construe the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at

2553 (citing Fed.R.Civ.P. 56(c)). Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## DISCUSSION

Section 1983 of Title 42 of the United States Code creates a mechanism for recovering monetary damages from and securing injunctive relief against governmental actors and entities whose action under color of state or local law deprive a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes. Plaintiff brings this instant action based on § 1983, alleging that her constitutional rights protecting against unreasonable search and seizure and use of excessive force in executing a search warrant have been violated.

### A. Claims against Hadden and Ingram: 11th Amendment Immunity

■ Plaintiff brings her claims against defendants Hadden and Ingram in both their official and their individual capacities. Hadden and Ingram, however, contend that they are protected by the Eleventh Amendment from suit. The Eleventh Amendment provides that:

[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

An unconsenting state is immune from lawsuits brought in federal court by the state's own citizens, *see Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), unless Congress has specifically abrogated Eleventh Amendment immunity pursuant to Section 5 of the Fourteenth Amendment or the state has waived its immunity. *Carr v. City of Florence,* 916 F.2d 1521, 1524 (11th Cir.1990). Congress, however, has not abrogated Eleventh Amendment immunity in § 1983 cases, nor has Alabama waived its immunity. *Id.*

■ In *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that state officials "acting in their official capacities" are outside the class of "persons" subject to liability under 42 U.S.C. § 1983. *Hafer v. Melo,* 502 U.S. 21, 22–23, 112 S.Ct. 358, 360–61, 116 L.Ed.2d 301 (1991). The question the court must determine is whether Hadden and Ingram are state officers. The Court finds that they are and that both Hadden and Ingram are entitled to summary judgment as to plaintiff's claims against them in their official capacities to the extent plaintiff seeks money damages; however, Hadden and Ingram are both subject to a personal capacity suit.

Clearly, as a sheriff, Hadden qualifies as a state officer. *See Carr,* 916 F.2d 1521. The more difficult question is whether Ingram qualifies as a state officer. Although Alabama law classifies deputies as state officers, Ingram had neglected to state specifically that he is a "deputy," but instead has stated only that he is an "investigator" for the sheriff's office. The court finds these titles, however, to be a matter of mere semantics and not dispositive.

In *Carr,* the Eleventh Circuit stated that a deputy is a legal extension of the sheriff, acting in his or her traditional function under Alabama law as the sheriff's alter ego. One of the duties of Sheriffs, by themselves or

deputies, as established by Alabama law, is to "ferret out crime." Ala.Code § 36–22–3 (1991). Here, in his duties as an investigator, Ingram appears to be acting as the sheriff's alter ego in "ferreting out crime," and, consequently, under the *Carr* court's reasoning, he too, as a legal extension of the sheriff, should be protected by Eleventh Amendment immunity from suit in his official capacity.

■ Although state officials acting in their official capacities are outside the class of "persons" who may be sued under § 1983, state officials sued in their individual capacities are "persons" for purposes of § 1983. *Hafer*, 502 U.S. at 23, 112 S.Ct. at 360–61. "Damages awards against individual defendants in federal courts 'are a permissible remedy in some circumstances notwithstanding the fact that they hold public office.'" *Id.* at 30, 112 S.Ct. at 364, citing *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). Accordingly, the court finds that Eleventh Amendment Immunity protects neither Hadden nor Ingram from suit in their individual capacities and that they may be held personally liable for damages under § 1983 based upon actions taken in their official capacities.

## B. Claims against Hadden and Ingram in their Individual Capacities: Qualified Immunity.

Although Hadden and Ingram are subject to personal-capacity suits, they may look to the personal privilege of qualified immunity to bar such suits. Both Hadden and Ingram claim they are immune from suit under the well-established doctrine of qualified immunity. When faced with the doctrine of qualified immunity, the plaintiff can avoid summary judgment by showing that the state defendants are not entitled to qualified immunity as a matter of law or that genuine issues of material fact exist so that the question of whether the state defendants are entitled to qualified immunity is only properly determined after findings of fact have been made by the jury. *Rich v. Dollar*, 841 F.2d 1558, 1562 (11th Cir.1988).

The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Rich*, 841 F.2d at 1563. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. A government official first must demonstrate that " 'he was acting within the scope of his discretionary authority' when the allegedly wrongful acts occurred." *Rich*, 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983)). If the defendant satisfies this burden, the plaintiff must then show either that the official lacked good faith or that the official's actions " 'violated clearly established constitutional law' " or a federal statute. *Id.*

Under the second prong, the court must determine whether the applicable law was clearly established at the time of the challenged action. This is determined by reference to decisions of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit, and, in this case, the Supreme Court of Alabama. *D'Aguanno v. Gallagher*, 50 F.3d 877, 881 n. 6 (11th Cir. 1995); *Courson v. McMillian*, 939 F.2d 1479, 1498 n. 32 (11th Cir.1991). The relevant inquiry is "fact specific," *Rodgers v. Horsley*, 39 F.3d 308, 311 (11th Cir.1994), and the plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir.1994); *see also Cofield v. Randolph County Commission*, 90 F.3d 468, 470 (11th Cir.1996). As emphasized in *Lassiter*, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-

situated, reasonable government agent that what defendant is doing violated federal law in the circumstances." *Id.; see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). The Eleventh Circuit has warned that plaintiffs must not be permitted "to discharge their burden by referring to general rules and to the violation of abstract 'rights.'" *Id.* at 1150. "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* (quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993), *modified,* 14 F.3d 583 (11th Cir. 1994)).

■ The Supreme Court of the United States has stated, however, that "a necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Thus, in following the framework established in *Siegert,* the court must first establish whether the plaintiff has asserted a constitutional violation before delving into the qualified immunity analysis. *See Tinney v. Shores,* 77 F.3d 378, 381 (11th Cir.1996) (citing *Wooten v. Campbell,* 49 F.3d 696, 699 (11th Cir.), *cert. denied,* —— U.S. ——, 116

S.Ct. 379, 133 L.Ed.2d 302 (1995)); *Jordan v. Doe,* 38 F.3d 1559, 1564 (11th Cir.1994).[7]

### 1. Unreasonable Search & Seizure Claim

■ Plaintiff meets her burden of asserting a constitutional violation, contending that her constitutional rights were violated when the defendants subjected her to an unreasonable search and seizure. The Fourth Amendment, which is applicable to the states through the Fourteenth Amendment, declares:

the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

In other words, "[e]ach citizen is 'clothed with constitutional protection against an unreasonable search or an unreasonable seizure,' and does not shed that protection at the door of" her motel room. *Swint v. City of Wadley,* 51 F.3d 988, 997 (11th Cir.1995) (quoting *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979)). For it is well settled that the "[u]se of a motel room for lodging provides the same expectation of privacy as does a home." *U.S. v. Ramos,* 12 F.3d 1019, 1023 (11th Cir.1994), citing *U.S. v. Roper,* 681 F.2d 1354, 1357 n. 1

---

**7.** The court notes that, in this circuit, it may in some instances no longer be necessary to answer this inquiry. In a recent case, the Eleventh Circuit diverged from the *Siegert* order of analysis and stated that "we now think it enough to decide that there was no *clearly established* constitutional right allegedly violated by the defendants." *Spivey v. Elliott,* 41 F.3d 1497, 1498 (11th Cir.1995) (italics added). There, the panel decided *sua sponte* to reexamine if *Siegert, supra,* required it to first determine "whether the violation of a constitutional right had been alleged" or whether it was sufficient to only decide "that there was no 'clearly established' constitutional right alleged." *Id.* at 1498.

The panel stated that, in *Spivey,* further analysis regarding the substantive right alleged would be "expensive" and burdensome to the parties: "Once there has been a determination that there is no 'clearly established' right, the parties can

accomplish little in pursuing the question of whether there is a right at all. The same parties will win and the same parties will lose regardless of the court's decision on that point." *Id.* at 1498–99. The panel further reasoned that:

[I]n the interest of efficiency and collegiality on this Court, where there are differing views as to the substantive right, this panel has chosen to withdraw all of its prior opinion which relates to whether the complaint alleges a constitutional right so that the opinion will serve as no precedent on that issue.

*Id.* at 1499. In so deciding, however, the panel was careful not to establish precedent: in addition to stating that "[t]hose who differ with the decision ... could write it off as dictum," the panel emphasized that its decision in no way precludes a court, if deemed appropriate, from first determining whether a plaintiff has asserted the violation of a constitutional right. *Id.*

(11th Cir.1982), *cert. denied sub nom, Newton v. U.S.,* 459 U.S. 1207, 103 S.Ct. 1197, 75 L.Ed.2d 440 (1983). Defendants have also met their burden, under the first prong of the *Zeigler* analysis, in as much as none of the parties contests that defendants were acting within their discretionary authority.

Under the second prong of the *Zeigler* analysis, the plaintiff must demonstrate the government official(s) either lacked good faith or violated clearly established statutory or constitutional law in obtaining the search warrant. In her brief, plaintiff argues that the affidavit attached to the search warrant presents only unverified hearsay by a confidential informant, and, therefore, that the defendants, acting in their discretionary authority, failed to provide the magistrate with a substantial basis for determining the existence of probable cause. At the time of the search of plaintiff's motel room, the law was clearly established that in order for a search warrant to be valid, those seeking the search warrant must have demonstrated probable cause. *See U.S. v. Leon,* 468 U.S. 897, 915, 104 S.Ct. 3405, 3416–17, 82 L.Ed.2d 677 (1984); *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). That is, "[s]ufficient information must [have] be[en] presented to the magistrate to allow that official to determine probable cause." *Leon,* 468 U.S. at 915, 104 S.Ct. at 3416. Consequently, the court must determine in reviewing this § 1983 action whether "a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). The court finds that, in the instant action, Hadden and Ingram acted as any reasonably well-trained officers in the same or similar circumstances.

Plaintiff argues that Ingram's affidavit was insufficient in that it failed to address the veracity of the reliable confidential informant by detailing previous instances of the informant providing truthful information, by describing details which would corroborate the informant's tip, or by otherwise verifying the informant's information. In 1983, the Supreme Court abandoned the two-pronged test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), which tended to separate the issue of an informant's "veracity" or "reliability" into a rigid and separate requirement. *Gates,* 462 U.S. at 230, 103 S.Ct. at 2328. Instead, the Court "reaffirmed the totality of the circumstances analysis that traditionally has informed probable cause determination" and that has "illuminate[d] the common sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.* at 230, 238, 103 S.Ct. at 2328, 2332.

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... concluding" that probable cause existed.

*Id.* at 238–39, 103 S.Ct. at 2332.

For instance, in *Gates,* the court noted that even though the affidavit did not necessarily allay any doubts as to the informant's motives, "the explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand entitles his tip to greater weight than might otherwise be the case." *Id.* at 234, 103 S.Ct. at 2330. On the other hand, where an affidavit contains only conclusory allegations or statements by a confidential informant with little basis at all for making a judgment regarding probable cause, then a court has no choice but to invalidate the resulting warrant. *See Aguilar,* 378 U.S. 108, 84 S.Ct. at 1511; *Nathanson v. U.S.,* 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

■ Relying on the flexible, common-sense standard of *Gates,* the court finds that while the affidavit in the instant case certainly contains conclusory statements, the affidavit also contains information sufficient to establish a substantial basis for allowing a

magistrate to find probable cause.[8] The affidavit states that the informant has identified and described the counterfeit merchandise, the exact place where the contraband was sold, and the name of the man accused of selling the contraband. Moreover, affiant Ingram corroborates the informant's claims by affirming that Zoltan Toth had previously been arrested for theft of trademarks, i.e., selling counterfeit merchandise.[9]

Based on the foregoing analysis, the court finds that a reasonably well-trained officer would have believed that his affidavit established probable cause and, consequently, that defendants Ingram and Hadden, in their individual capacities, are shielded by qualified immunity from plaintiff's claims of unreasonable search and seizure. Additionally, as plaintiff acknowledged in her brief, because the court has determined that the search warrant was valid, plaintiff's state law claims of invasion of privacy and trespass must also fail. *See* Pl.'s Br. in Opp. to Summ.J. at 15.

### 2. Excessive Force Claim

■ In addition to her claim that she was subjected to an unconstitutional search and seizure, plaintiff also contends that defendants used excessive force in "seizing [her] and searching her room." *See* Compl. at 3. "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S.

386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). The Supreme Court held in *Graham* that:

> [A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection ... that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Id.* at 395, 109 S.Ct. at 1871. Consequently, the court finds that plaintiff asserts a violation of the Fourth Amendment, made applicable to the states by the Fourteenth Amendment.[10] There is no dispute that defendants were acting within their discretionary authority at the time the alleged excessive force occurred.

■ At the time that plaintiff was "seized," it was clear that "the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct." *Id.* In order to determine whether defendants Ingram and Hadden are shielded from plaintiff's allegations of excessive force, the court must determine "whether the officer[s'] actions are 'objectively reasonable' in light of the facts and

8. The court acknowledges that while the examination of the instant affidavit may not necessarily result in a clear-cut, unequivocal showing of probable cause, any concerns should be resolved in favor of upholding the warrant. "[A] search warrant provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime," and, therefore, there has long been a "strong preference for warrants." *U.S. v. Leon*, 468 U.S. 897, 913–14, 104 S.Ct. 3405, 3415–16, 82 L.Ed.2d 677 (1984) (internal citations omitted). Consequently, "[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded warrants." *Gates*, 462 U.S. at 237, n. 10, 103 S.Ct. at 2331, n. 10. "Only where the

warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986) (internal citations omitted).

9. Although law enforcement officers are no longer required to specifically and separately set forth in an affidavit evidence which would allow the magistrate to find that the informant's report is reliable and credible and that the corroborating evidence is not stale, they are well-advised to include such information in their affidavits so as to avoid suits like the instant action.

10. Plaintiff suggested in her brief that her claim falls under the Fourteenth Amendment substantive due process claim, hinting that her claim was similar to the "non-seizure" claim allowed in *Wilson v. Northcutt*, 987 F.2d 719 (11th Cir. 1993).

circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. at 1872. In making this determination, the court should consider the "facts and circumstances of each particular case." *Id.* at 396, 109 S.Ct. at 1872. "Whether a specific use of force is excessive turns on factors such as the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir. 1993). The excessive force standard establishes no bright line, and so qualified immunity applies unless every reasonable officer in the defendants' positions would conclude the force was unlawful. *See id.*

Plaintiff testifies that she was alone in her motel room, which contained one door and one window. She alleges that the defendants entered her motel room, pushed her aside, and held her on the bed with a wooden baton at her throat the entire time they searched her room. Additionally, she states that the defendants refused her repeated requests that they allow her to take her diabetes medication and that the defendants stayed in the room for "what seemed like about an hour or more." Although she admits that there was a handgun in the drawer of the bedside table, plaintiff contends that she was "cooperative" during the search. Defendants agree that she was not "physically abusive."

■ Relying on *Post,* the defendants contend that their treatment of the plaintiff was not unreasonable. In *Post,* the plaintiff was subjected to a "chokehold" for five seconds and was then shoved against a wall. *Id.* at

1559–60. The Eleventh Circuit held this conduct was not necessarily unreasonable under the circumstances and allowed the defendants to assert qualified immunity. *Id.* The court finds the facts of the instant case to be significantly different from those in *Post.* Here, in addition to being shoved and struck with a wooden baton, the plaintiff was held on the bed with the baton at her throat during the entire time the defendants searched her room.[11] Moreover, the defendants refused to allow her to take her medication for "what seemed like an hour or more." Taking the facts as plaintiff presents them, which the court is required to do at this stage in the proceedings, the court must conclude that the officers' conduct, as alleged by the plaintiff, was not objectively reasonable in light of the facts and circumstances confronting them.[12] Accordingly, the court finds that defendants' motion for summary judgment on plaintiff's excessive force claims is due to be denied.

### C. Claim Against the City

In addition to bringing suit against defendants Ingram and Hadden, who are employees of the Houston County Sheriff's Department, plaintiff also brings a separate claim against the City of Dothan for its failure to adequately train members of its police department in the law of search and seizure and the appropriate use of force in the execution of a search warrant. A municipality, however, may only be held accountable for the deprivation of a citizen's constitutional rights if the deprivation was the result of a municipal custom or policy. *See Monell v.*

---

11. Plaintiff does not make it clear whether the baton was used to effect a "chokehold," "barhold," or some other neck restraint. A chokehold is defined as holding the subject's neck in the crook of the officer's forearm and bicep muscle, with pressure applied upward. A chokehold will not, if applied properly, interfere with the subject's breathing or crush the larynx, producing death. A barhold, which is not a proper police procedure, applies pressure at the front of the subject's neck and can be effectuated with a baton or the forearm; it should not be used as it will interfere with the subject's breathing, crush the larynx and choke the subject. Neither procedure is considered by the court to be reasonable police procedure unless an officer is in danger of death or grievous bodily harm. *See Tennessee v.*

*Garner,* 471 U.S. 1, 12, 105 S.Ct. 1694, 1701–02, 85 L.Ed.2d 1 (1985) (holding that "where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.").

12. For purposes of deciding a motion for summary judgment, the court does not consider issues of credibility but instead takes the facts as plaintiff alleges them. The court reminds the parties, however, that any qualified immunity defenses that do not result in summary judgment before trial may be renewed at trial, where the actual facts will be established.

*New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Specifically, the Supreme Court has held that a city's failure to train its police officers can amount to a policy or custom "[o]nly where [such failure to train] evidences a 'deliberate indifference' to the rights of its inhabitants." *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality ... can a city be liable for such a failure under § 1983." *Id.* at 389, 109 S.Ct. at 1205.

In order to establish a municipality's liability under *Canton,* the plaintiff must prove first that the training program was inadequate. *Id.* at 390, 109 S.Ct. at 1205–06. If the training is inadequate, then "the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Id.* Moreover, "the need for such training must be plainly obvious to Department decisionmakers." *Wright v. Sheppard,* 919 F.2d 665, 674 (11th Cir.1990) (finding no actual notice of unconstitutional practices where there was "no evidence of a history of widespread prior abuse" that would put decisionmaker on notice). Plaintiff has failed to offer any evidence to satisfy these elements.

 In an effort to substantiate her claim against the City of Dothan, plaintiff contends that Sergeant Hughes "reasonably knew or should have known based on his training by the city of Dothan police department" that the search warrant was invalid and that the force administered against plaintiff was excessive. Pl.'s Br. in Opp. to Mot. for Summ.J. at 14. The court notes, however, that "to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" is insufficient to show inadequate training or policy. *Canton,* 489 U.S. at 391, 109 S.Ct. at 1206. Consequently, plaintiff's contention that her constitutional rights were violated during the search and seizure is insufficient to show inadequate training or policy. Plaintiff has failed to present any other evidence to support her claims that the City of Dothan has inadequate policies and

training and that such policies and training programs rise to the level of "deliberate indifference" on the part of the municipality. Therefore, the court finds that defendants' motion for summary judgment of plaintiff's § 1983 claims against the City of Dothan is due to be granted.

### CONCLUSION

Based on the foregoing analysis, the court finds that defendant City of Dothan's motion for summary judgment is due to be granted. A judgment in accordance with this finding will be entered separately.

It is CONSIDERED and ORDERED that defendants Hadden and Ingram's motion for summary judgment be and the same is hereby GRANTED in part and DENIED in part.