**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MICHAEL EASLEY; STEPHANIA
SESSION,

              Plaintiffs-Appellants,

  v.

CITY OF RIVERSIDE; SERGIO DIAZ;
SILVIO MACIAS; DOES, 1 to 10,
inclusive,

              Defendants-Appellees.

No.   16-55941

D.C. No.
5:14-cv-00117-TJH-SP

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, District Judge, Presiding

Argued and Submitted December 10, 2018
San Francisco, California

Before: THOMAS, Chief Judge, and GRABER, W. FLETCHER, PAEZ,
BERZON, BYBEE, BEA, M. SMITH, CHRISTEN, HURWITZ and BENNETT,
Circuit Judges.

     Michael Easley appeals the *sua sponte* grant of summary judgment against

him in an action under 42 U.S.C. § 1983 alleging that a County of Riverside officer

---

     *     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

used excessive force in a shooting. We reverse and remand for trial. Because the parties are familiar with the history of this case, we need not recount it here.

After the close of discovery, the parties filed a joint stipulation. Easley agreed to dismiss some of the defendants named in the suit and not to pursue a claim for denial of medical care and a claim for *Monell*[1] liability. In exchange, the remaining Defendants agreed that they would "not seek partial summary judgment on the remaining claims," which included the Fourth Amendment excessive force claim based on the events of the shooting.

At the pretrial status conference, despite the fact that Defendants had agreed not to file a motion for summary judgment based on qualified immunity, the district court raised the issue of summary judgment *sua sponte*. The court declared that there were credibility issues to be determined and *sua sponte* ordered that an evidentiary hearing be held on the question of qualified immunity.

At the scheduled hearing, Easley's counsel noted that the parties had agreed during their meet and confer session that there were disputed issues of material fact pertaining to the shooting. He further advised the court that Easley was not present because his attorney believed that the issue of qualified immunity would be resolved on the record. The judge expressed surprise that neither Easley nor one of

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

the officers was present, stating, "[C]redibility is an issue here and without [Easley], how the hell can we do that?" Easley's counsel responded that, if there were disputed issues of fact, those should be resolved by a jury. The court nonetheless directed the parties to be prepared to present witnesses at a rescheduled evidentiary hearing.

The district court devoted the entirety of the rescheduled evidentiary hearing to determining whether the officer should be afforded qualified immunity. The court heard testimony from the officers, Easley, and various experts. The court proceeded to resolve disputed factual issues and *sua sponte* granted summary judgment to the officer based on qualified immunity.

"[O]rdinarily there is no such thing as an evidentiary hearing, or findings of fact, on a summary judgment motion." *Thompson v. Mahre*, 110 F.3d 716, 719 (9th Cir. 1997). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 255. And, at the summary judgment stage, all record evidence must be viewed in the light most favorable to the non-

3

moving party, who also must be afforded the benefit of all reasonable inferences. *Id.* Although a qualified immunity "defense should be resolved as early as possible," *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998), the general rules concerning "a 'judge's function' at summary judgment" continue to apply, *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 249).

In this case, based on testimony elicited at the *sua sponte* evidentiary hearing, the district court resolved disputed factual issues, some of which required the court to assess witnesses' credibility. Resolving disputed issues of fact and making credibility determinations are not permitted at the summary judgment stage. Because there were disputed issues of fact, and in light of the parties' joint stipulation, we must reverse the entry of summary judgment and remand for trial. The defendant officers may still seek qualified immunity by filing a Federal Rule of Civil Procedure 50(a) motion before the case is submitted to the jury, as outlined in *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009); *see also* Fed. R. Civ. P. 50(a). We need not, and do not, reach the merits of any other issue urged by the parties. Each party shall bear its own costs on appeal.

**REVERSED AND REMANDED**.

<u>Easley v. City of Riverside</u>, No. 16-55941

GRABER, Circuit Judge, with whom BERZON, CHRISTEN, and HURWITZ,

Circuit Judges, join, concurring:

I concur in the majority disposition. I write separately to add that, in my

view, a district court may not—as the court did here—sua sponte raise the issue of

qualified immunity (or any other non-jurisdictional affirmative defense) when the

defendant has waived that issue. <u>See, e.g.</u>, <u>Moore v. Morgan</u>, 922 F.2d 1553, 1555,

1557–58 (11th Cir. 1991) (holding that, where the defendant officials waived the

affirmative defense of qualified immunity, the district court "improperly injected

the issue of qualified immunity into the case" by sua sponte ordering the parties to

brief the issue and then conducting "a supplemental evidentiary hearing devoted

solely to this issue"); <u>Summe v. Kenton Cty. Clerk's Office</u>, 604 F.3d 257, 269–70

(6th Cir. 2010) (declining to address qualified immunity on appeal where the

district court sua sponte held that the defendant was entitled to qualified immunity,

because the defendant waived that defense at summary judgment); <u>Haskell v.

Washington Township</u>, 864 F.2d 1266, 1273 (6th Cir. 1988) ("Since [the statute of

limitations] is a waivable defense, it ordinarily is error for a district court to raise

the issue <u>sua sponte</u>."); <u>Wagner v. Fawcett Publ'ns</u>, 307 F.2d 409, 412 (7th Cir.

1962) (holding that, where the defendant waived the affirmative defense of the

statute of limitations, the district court "had no right to apply the statute of

limitations sua sponte").

Here, the waiver pertained only to summary judgment, but that is precisely the waiver that the district court failed to respect. Defendant Macias affirmatively waived the qualified-immunity affirmative defense, both in writing and orally, for the purpose of summary judgment; that is, he agreed to go to trial on that affirmative defense. And there was consideration for his promise; he agreed not to move for summary judgment in exchange for Plaintiff's dismissing certain claims. I would hold, therefore, that the district court improperly injected the issue of qualified immunity into a pretrial summary judgment proceeding.

*Easley v. City of Riverside*, No. 16-55941

BERZON, Circuit Judge, concurring:

I concur in the majority disposition and in Judge Graber's concurrence. I write separately to note another basis for reversing the district court: I would hold that an evidentiary hearing to determine whether summary judgment is appropriate is never permitted. The district court erred in using such a procedure.

Federal Rule of Civil Procedure 56 is explicit that, in determining whether summary judgment is appropriate, a district court is limited to the record. The district court may consider "particular parts of materials *in the record*, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," cited by the parties. Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). If the district court is unsatisfied with the materials cited, the court "may consider other materials," but only if those materials are likewise "*in the record*." Fed. R. Civ. P. 56(c)(3) (emphasis added). And, if the existing record is inadequate to resolve a summary judgment motion, Rule 56 provides that a district court may "defer considering the motion or deny it" or "allow time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d).

1

The limitation to written, available material accords with the purpose of summary judgment—"the elimination of waste of the time and resources of both litigants and the courts in cases where a trial would be a useless formality." *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135–36 (9th Cir. 1975). Conducting what is in form a bench trial, with or without findings on disputed issues or credibility findings, multiplies rather than constrains inefficiency and delay.

I recognize that some courts—including ours[1]—have, relying on Federal Rule of Civil Procedure 43(c), indicated that an evidentiary hearing for purposes of summary judgment is permissible in rare circumstances. *See, e.g.*, *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1109 (7th Cir. 2014); *Seamons v. Snow*, 206 F.3d 1021, 1025 (10th Cir. 2000). But those decisions are based on the assertion

---

[1] Contrary to the dissent's assertions, it is far from clear that the suggestions in our case law that such a procedure is permissible—none of which were in cases upholding reliance on such a hearing—should be given any precedential weight. *See LaLonde v. County of Riverside*, 204 F.3d 947, 953 & n.10 (9th Cir. 2000) (disapproving a district court's adverse factual findings against a plaintiff on summary judgment and stating that "we could view the district judge's *sua sponte* actions as constituting a bench trial on the issues he decided"); *Thompson v. Mahr*, 110 F.3d 716, 720–21 (9th Cir. 1997) (indicating that an evidentiary hearing could be permissible but noting that "what took place was not a summary judgment denying qualified immunity, but rather a [stipulated] trial on the issue of qualified immunity, to the court without a jury"); *McGuire v. Columbia Broad. Sys., Inc.*, 399 F.2d 902, 907 (9th Cir. 1968) (suggesting that an evidentiary hearing would be permitted but holding that a district court did not abuse its discretion in quashing a subpoena for oral testimony).

that Rule 43(c) "authorizes the use of oral testimony for motions generally." *Seamons*, 206 F.3d at 1025. Although that proposition has been recited by commentators without further consideration, *see* 11 James Wm. Moore et al., *Moore's Federal Practice* ¶ 56.110[2][a] (3d ed. 2007); 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2723 (4th ed. 2016), it is wrong.

Rule 43(c) cannot possibly extend that far. The rule's own text limits its application: "*When a motion relies on facts outside the record*, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions." Fed. R. Civ. P. 43(c) (emphasis added). As already discussed, summary judgment is, by definition, based only on material "*in* the record." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). None of the authorities relying on Rule 43(c) as the premise for approving evidentiary hearings on summary judgment recognizes that Rule 43(c) and Rule 56(c)(1)(A) are on their face mutually exclusive. Rule 43(c) cannot possibly override the express limitation contained in Rule 56(c)(1)(A); instead, it specifies a procedure for determining facts outside the record when doing so is otherwise permitted. Rule 43(c) would not, for example, permit oral factual testimony in resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6), because such a motion is limited to facts stated in the complaint or incorporated therein. *See Farr v. United States*, 990 F.2d 451, 454

3

(9th Cir. 1993) ("[E]vidence outside the pleadings . . . cannot normally be considered in deciding a 12(b)(6) motion.").

I note, finally, that this procedure is particularly improper in the context of qualified immunity. As the Supreme Court has repeatedly emphasized, qualified immunity "is an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Here, however, the district court conducted what was essentially a two-day bench trial, during which Easley, Officer Macias, and multiple witnesses testified on the stand. Far from expediting the case, the district court's evidentiary hearing "force[d] the parties to endure additional burdens of suit—such as the costs of litigating constitutional questions and delays attributable to resolving them—when the suit otherwise could be disposed of more readily." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

I join the majority disposition in full. In my view, however, the district court never should have held the evidentiary hearing it ordered *sua sponte,* whether or not the parties stipulated to bypass summary judgment (as they did), and whether or not the court held the hearing with the intent to make credibility findings improper on summary judgment (as it did).

*Easley v. City of Riverside*, No. 16-55941

PAEZ, Circuit Judge, concurring:

I concur in the majority disposition and in Judge Berzon's separate

concurrence regarding the impropriety of an evidentiary hearing at summary

judgment.



*Easley v. City of Riverside*, 16-55941

BENNETT, Circuit Judge, with whom BEA, Circuit Judge, joins, dissenting:

I respectfully dissent. The majority has identified no basis for reversing the district court and remanding this case for trial. Even if the district court erred in its qualified immunity analysis, we, like the panel, review its grant of summary judgment de novo. I believe that based on such a review, and based on a faithful application of the Supreme Court's clear guidance and direction on the issue of qualified immunity, Officer Silvio Macias is entitled to qualified immunity. Therefore, I would affirm.

## I.

Although the majority states that it "must" reverse the district court's decision, it fails to identify any *reversible* error. The majority identifies, with very little specificity, supposed error by the district court—that it resolved factual disputes and made credibility determinations not permitted at the summary judgment stage. Maj. at 4. But the majority does not explain why such error requires reversal.[1] Further, the majority does not even mention the well-

---

[1] Notably, the majority also does not explain why, upon de novo review, it would be wrong to view the facts untainted by the district court's supposed error, as the panel majority did, and reach a conclusion that Officer Macias is entitled to qualified immunity.

The majority notes that the district court conducted an evidentiary hearing, but it does not find that such procedure was error. Maj. at 3. However, Judge Berzon's concurrence states that it is never proper for a court to hold an

1

established rule that we review summary judgments de novo.  *See Lopez v.*

*Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017).

Here, whether the district court committed the error that the majority

identifies is irrelevant because "[d]e novo review means that the reviewing court

'does not defer to the lower court's ruling but freely considers the matter anew, as

if no decision had been rendered below.'"  *Dawson v. Marshall*, 561 F.3d 930, 933

(9th Cir. 2009) (internal brackets omitted) (quoting *United States v. Silverman,* 861

F.2d 571, 576 (9th Cir. 1988)).  In applying de novo review, we routinely "affirm

the district court's judgment on any ground finding support in the record, even if it

relied on the wrong ground or reasoning."  *Moreland v. Las Vegas Metro. Police*

---

evidentiary hearing to determine whether summary judgment is appropriate.  But she admits that her position is contrary to our own circuit precedent, precedent from other circuits, and literature by commentators.  There is explicit language in our case law clearly supporting that a court may take oral testimony at a hearing on a motion for summary judgment.  *See Thompson v. Mahre*, 110 F.3d 716, 720 (9th Cir. 1997) ("District courts may in their discretion 'sparingly and with great care' take oral testimony under Federal Rule of Civil Procedure 43(e) on a summary judgment motion." (quoting 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2723, at 62 (2d ed. 1983)); *McGuire v. Columbia Broad. Sys., Inc.*, 399 F.2d 902, 907 (9th Cir. 1968) ("Rule 56 F.R.C.P. is silent as to the taking of oral testimony at a hearing on a motion for summary judgment, but Rule 43(e) F.R.C.P. clearly states that the Court may direct that the matter (of the motion) be heard wholly or partly on oral testimony . . . ." (internal quotation marks omitted)).  Rule 43(e) is now designated as Rule 43(c).  *See* 9A Charles A. Wright et al., *Federal Practice and Procedure* § 2416 (3d ed. 2008).  Even if we were to change the law of this circuit and apply it retroactively, however, it would not change the outcome of this case.  That is, nothing that I am aware of would allow the exclusion of the sworn testimony that was given during the evidentiary hearing.

2

*Dep't*, 159 F.3d 365, 369, 371 (9th Cir. 1998) (noting that the district court erroneously analyzed a claim under the wrong standard, but upon de novo review, affirming the district court's grant of summary judgment); *see also Hell's Angels Motorcycle Corp. v. McKinley*, 360 F.3d 930, 933–34 (9th Cir. 2004) (observing that the district court's qualified immunity analysis was flawed, but upon de novo review, affirming the district court's grant of qualified immunity).

The majority cites no authority supporting why it is appropriate here to ignore our normal de novo review procedures and reverse without considering the merits of this case untainted by the supposed error. Worse still, the majority does more than simply reverse; it reverses with direction to the district court to proceed directly to trial. Maj. at 4.[2] By doing so, the majority in effect reverses the district

---

[2] The majority states that it must reverse and remand *for trial* in light of the parties' joint stipulation without explaining why that is so. Maj. at 4. The Petition for Rehearing En Banc does not even mention the stipulation. And Easley's counsel readily and correctly acknowledged during oral argument that the parties' joint stipulation was not binding on the court. Because "[d]istrict courts unquestionably possess the power to enter summary judgment sua sponte, even on the eve of trial," *Norse v. City of Santa Cruz*, 629 F.3d 966, 971 (9th Cir. 2010) (en banc), the stipulation is irrelevant, and even if we err by reversing without reaching the merits, we should certainly not further err by stripping the district court of the ability to reconsider qualified immunity *before* trial. In my view, the reference to the stipulation as a reason to order trial is a *non sequitur.*

Further, while Judge Graber's concurrence states that it was error for the district court to sua sponte raise the issue of qualified immunity in light of the parties' joint stipulation, she does not explain why the district court was bound by the stipulation. And the out-of-circuit cases she cites are readily distinguishable. *See Moore v. Morgan*, 922 F.2d 1553, 1557–58 (11th Cir. 1991) (finding waiver of the qualified immunity defense because it was "never raised . . . [as an] affirmative

3

court on the merits without even reaching the merits, as the remedy the majority

orders—trial—is the exact same remedy it would have ordered had it actually

reached the merits on de novo review and reversed.[3]

We should, instead, decide the issue of qualified immunity de novo. In

doing so, we "should affirm the district court's grant of summary judgment if,

defense" and "[n]either the issue, nor the words, of qualified immunity was ever raised before or during trial"); *Summe v. Kenton Cty. Clerk's Office*, 604 F.3d 257, 269–70 (6th Cir. 2010) (holding that the qualified immunity defense was waived where it was "never raised . . . as a defense in [the defendant's] summary judgment motion and it was not briefed by the parties"); *Haskell v. Washington Twp.*, 864 F.2d 1266, 1272, 1273 n.3 (6th Cir. 1988) (finding waiver of a statute of limitations defense where it was not asserted in the answer to the complaint and the defendants "offered no hint of the defense until the district court raised the issue *sua sponte* more than three years after the action was filed"); *Wagner v. Fawcett Publ'ns*, 307 F.2d 409, 412 (7th Cir. 1962) (holding that it was improper for the court to apply the statute of limitations defense sua sponte where the defendant's motion to dismiss did not assert the defense and the defendant failed to file an answer asserting the affirmative defense). In contrast, here, the defendants asserted qualified immunity as a defense in their answer; the pre-trial conference order signed by the district court judge and counsel for the parties stated that "Officer Macias . . . will rely on qualified immunity"; and both parties briefed the issue of qualified immunity in response to the district court's evidentiary hearing order.

[3] We have an obligation to "resolv[e] immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). The en banc majority, however, does not discuss this obligation. The majority states that Officer Macias can bring a Rule 50(a) trial motion for judgment as a matter of law before the case is submitted to the jury. Maj. at 4. But that is no substitute for the very protection afforded by qualified immunity, because the "entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).

4

viewing the facts in the light most favorable to the nonmoving party, there are no issues of material fact and summary judgment is appropriate as a matter of law." *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1503–04 (9th Cir. 1994).

## II.

I believe the district court's grant of summary judgment on qualified immunity was correct on the merits. I discuss the merits only briefly, as the majority does not discuss them at all.

An officer is entitled to qualified immunity if his conduct did not violate clearly established law. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "[C]onduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that *every* 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 741 (internal alterations omitted and emphasis added) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

While "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question *beyond debate*," *id.* (emphasis added), so that government officials have "fair and clear warning" that their conduct is unlawful, *United States v. Lanier*, 520 U.S. 259, 271 (1997). And the burden is on Easley to "identify sufficiently specific constitutional precedents to alert [the defendant] that his particular conduct was unlawful." *Shafer v. Cty. of*

5

*Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017), *cert. denied*, *sub nom. Shafer v. Padilla*, 138 S. Ct. 2582 (2018).

And, of course, "the clearly established right must be defined with specificity" and not "at a high level of generality." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam). Specificity is especially important in the context of the Fourth Amendment.

> Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. . . . Precedent involving similar facts can help move a case beyond the otherwise "hazy border between excessive and acceptable force[.]"

*Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (citation omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309, 312 (2015)).

With those controlling precedents in mind, I turn to the facts, and I provide only a brief description as I believe the panel majority correctly recounted the facts in detail and in the light most favorable to Easley. *See* 890 F.3d 851, 854 (2018).[4] During the night of December 22, 2011, Officer Macias and his partner chased a vehicle that began driving dangerously in an attempt to evade the officers after they started following it, and that did not yield to their patrol car's lights and sirens. As soon as the vehicle stopped, Easley got out of the vehicle and ran away

---

[4] Again, the en banc majority does not discuss why it would be improper for us, upon de novo review, to view the facts as the panel majority did.

from the officers, clutching his waistband. Officer Macias's partner yelled, "Gun" or "He's got a gun." Officer Macias sprinted after Easley. While running away, Easley made a sudden arm movement across his body (it was later determined that he threw a gun). Within two to four seconds after the sudden arm movement, Officer Macias fired three shots, striking Easley twice in the right arm and once in the back.[5]

To satisfy his burden of identifying clearly established law, Easley relies on two cases—*Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991) and *Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997).[6] *Curnow* and *Harris* are so factually different from the present case that it cannot be said that these cases gave a "fair

---

[5] I do not believe that, in viewing the facts in the light most favorable to Easley, we must conclude that Officer Macias actually saw Easley throw the gun and shot Easley only after having recognized that Easley was unarmed and not dangerous. Indeed, even Easley argues that, viewing the evidence in the light most favorable to him, "Officer Macias observed an object leave Mr. Easley's hand, but *did not know what that object was*." As discussed herein, *that* fact, along with the other relevant undisputed facts, leads to a finding of qualified immunity pursuant to relevant case law from the Supreme Court and this court.

[6] The two other cases cited by Easley were decided after the events at issue here occurred. *See George v. Morris*, 736 F.3d 829 (9th Cir. 2013); *Lopez*, 871 F.3d 998. These cases are of no use in demonstrating that Officer Macias's conduct violated a clearly established law "because a reasonable officer is not required to foresee judicial decisions that do not yet exist in instances where the requirements of the Fourth Amendment are far from obvious." *Kisela*, 138 S. Ct. at 1154 (holding that a case decided after the conduct at issue occurred was irrelevant to the clearly established inquiry).

and clear warning," *Lanier*, 520 U.S. at 271, to Officer Macias that his acts were unlawful.

In *Curnow*, we held that the officers were not entitled to qualified immunity at the summary judgment stage under the following circumstances: the suspect was located inside his home, the officers observed a gun laying at the side of the suspect, and the suspect did not reach for the gun before being shot, did not point the gun at the officers before being shot, and was not facing them when he was shot. 952 F.2d at 323, 325. *Curnow* did not involve a nighttime car chase followed by a foot chase of a suspect who was actually armed with a gun while evading the police and who made a sudden, objectively threatening arm movement.

Likewise, the circumstances in *Harris* did not clearly establish that Officer Macias's conduct was unlawful. In *Harris*, an FBI sniper who was "safely ensconced on [a] hill" shot a man while he was retreating to a cabin. 126 F.3d at 1203. Prior to being shot, the man was armed but had not made any threatening movements. *Id.* Suffice it to say, no reasonable officer would understand *Harris* as applying to the conduct at issue here given the stark factual differences.

Easley claims that "[t]his is one of those *rare* cases in which the constitutional right at issue is defined by a standard that is *so 'obvious'* that we must conclude . . . that qualified immunity is inapplicable, even without a case

8

directly on point." *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 455 (9th Cir. 2013) (emphasis added) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). I disagree.

Comparing the present case to others where we have found obvious constitutional violations illustrates that this is far from an obvious case. Take *Harris*, for example, where a sniper located safely on a hill shot a retreating suspect who made absolutely no threatening movements. 126 F.3d at 1203. We held that the circumstances in *Harris* made it obvious that no reasonable officer would understand the sniper's conduct to be appropriate or lawful. *Id.* at 1204. As another example, in *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001), we held that a reasonable officer would have known that shooting a suspect in the face with a beanbag round was unlawful under the following circumstances, among others: the officer could have avoided the confrontation as roadblocks had been set up to prevent the suspect from escaping, there was no immediate need to subdue the suspect before negotiators arrived, the suspect did not pose an immediate threat to officers, the suspect had not attempted to flee or escape, and the suspect had complied with officers' instructions to discard weapons whenever asked to do so. *Id.* at 1275, 1281–82, 1285–86.

By contrast, the facts here do not present an obvious situation where *every* reasonable officer would know that his conduct violates the law. Here, the conduct involved a dangerous car chase followed by a foot chase in the dark. The pursuing

9

officer, based on undisputed facts, reasonably perceived that the fleeing suspect was armed with a gun, and indeed, the suspect was actually armed with a gun. And the sudden gesture and motion—again, looking at the undisputed facts—was objectively threatening under the circumstances. A few seconds later, the officer shot the suspect. At best from Easley's perspective, this is one of those cases that falls within the "hazy border between excessive and acceptable force." *Kisela*, 138 S. Ct. at 1153 (quoting *Mullenix*, 136 S. Ct. at 312).

In summary, Officer Macias's conduct, even when viewed in the light most favorable to Easley, did not violate clearly established law. No case identified by Easley comes close to the facts here. Thus, it is clear to me that the district court got it right.

We have clear guidance and direction from the Supreme Court, as recent as this year, on qualified immunity. Indeed, the Supreme Court has given us repeated guidance and direction over an extended period of time regarding the correct formulation for defining clearly established law.[7] I believe that faithfully applying

---

[7] Since 2011 the Supreme Court has disagreed with us *six times* because we incorrectly determined that the law was clearly established in the qualified immunity context. *See Emmons*, 139 S. Ct. at 502–04 (per curiam) (vacating our denial of qualified immunity because our "formulation of the clearly established right was far too general"); *Kisela*, 138 S. Ct. at 1153–55 (summary reversal order) (per curiam) (reversing our denial of qualified immunity because the alleged violation was "far from . . . obvious" and the cases we relied upon did not clearly establish a violation because they were so factually different); *City & Cty. of San Francisco, Cal. v. Sheehan*, 135 S. Ct. 1765, 1776–77 (2015) (reversing our denial

the Supreme Court's guidance and direction here mandates affirmance. I also believe that the en banc majority's chosen course—not reaching the merits but nonetheless remanding the case for trial as if we had reversed on the merits—is a mistake. I therefore must respectfully dissent.

---

of qualified immunity because the cases we relied upon did not clearly establish that the conduct at issue was unlawful because those cases were so factually different); *Wood v. Moss*, 572 U.S. 744, 748 (2014) (reversing our denial of qualified immunity because no clearly established law alerted Secret Service agents that they bore a First Amendment obligation to ensure groups with different viewpoints were at comparable locations to the President at all times); *Stanton v. Sims*, 571 U.S. 3, 9 (2013) (summary reversal order) (per curiam) (reversing our denial of qualified immunity because, in determining that the law was clearly established, we interpreted cases "far too broadly"); *Ashcroft*, 563 U.S. at 741 (reversing our denial of qualified immunity because "not a single judicial opinion had held" that the conduct at issue was unconstitutional).